# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### MEMPHIS DIVISION

|  |  |  |
|---|---|---|
| WILLIAM H. THOMAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-02987 |
| | ) | |
| JOHN SCHROER, COMMISSIONER of TENNESSEE DEPARTMENT OF TRANSPORTATION, in his individual capacity, JOHN REINBOLD, in his individual capacity, PATTI BOWLAN, in her individual capacity, ROBERT SHELBY, in his individual capacity, CONNIE GILLIAM, in her individual capacity, and SHAWN BIBLE, in her individual capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## AMENDED COMPLAINT[1]

Plaintiff William H. Thomas, Jr. ("Plaintiff" or "Mr. Thomas") hereby files his Amended Complaint against Defendants John Schroer, John Reinbold, Patti Bowlan, Robert Shelby, Connie Gilliam, and Shawn Bible, and alleges as follows:

### PARTIES

1.

Plaintiff William H. Thomas, Jr. is the individual owner of several parcels of real property in the State of Tennessee.

---

[1] Although Plaintiff's Consent Motion to Extend Deadline to File Amended Complaint (ECF No. 37) is currently pending before the Court, Mr. Thomas files this Amended Complaint in the abundance of caution so that Plaintiff does not miss the current deadline established in the Court's September 10, 2014 Order (ECF No. 34). Should the Court subsequently grant Plaintiff's Consent Motion or Motion for Reconsideration (ECF No. 35), Plaintiff will file a subsequent Amended Complaint in accordance with any such order by the Court.

2.

Defendant John Schroer is the current Commissioner of the TDOT.  Defendant Schroer, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

3.

Defendant John Rienbold is an employee of the TDOT.  Defendant Rienbold, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

4.

Defendant Patti Bowlan is an employee of the TDOT.  Defendant Bowlan, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

5.

Defendant Robert Shelby is an employee of the TDOT.  Defendant Shelby, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

6.

Defendant Connie Gilliam is an employee of the TDOT.  Defendant Gilliam, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

7.

Defendant Shawn Bible is an employee of the TDOT.  Defendant Bible, in conjunction with the other Defendants named herein, participated in the formulation and implementation of the improper decisions and actions adverse to Plaintiff as described herein.

## JURISDICTION AND VENUE

8.

Plaintiff's claims arise under the First, Fifth, and Fourteenth Amendments to the United States Constitution and Section 1983 of the Civil Rights Act.  Plaintiff's claims also deal with Defendant's rights afforded pursuant to 23 U.S.C. § 131.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

9.

Venue is proper against Defendants under the facts and circumstances alleged herein.

## FACTUAL ALLEGATIONS

10.

Mr. Thomas is the owner of various tracts of real property at various locations in the State of Tennessee.  One such parcel of real property is located at 5207 Interstate 40 West in Memphis, Tennessee.

11.

Mr. Thomas is also in the business of posting outdoor advertising signs for the display of commercial and noncommercial messages.

12.

On several occasions, Mr. Thomas has used outdoor advertising signs located on property that he owns, or otherwise has a valid property interest in, for the display of noncommercial messages.

13.

TDOT has the responsibility of promulgating and enforcing regulations related to billboards and outdoor advertising signs under the Billboard Regulation and Control Act of 1972, as set forth at Tennessee Code Annotated §§ 54-21-101, *et seq.*

14.

TDOT is authorized and encouraged to regulate billboards and outdoor advertising signs pursuant to the Federal Highway Beautification Act of 1965, as amended. See 23 U.S.C. §§ 131, *et seq.* TDOT and Defendants are required to comply with the mandates of 23 U.S.C. §§ 131, *et seq.*, if the State does not wish to lose substantial transportation funding provided by the federal government. TDOT and Defendants are also required to comply with the U.S. and Tennessee Constitutions.

15.

Tennessee Code Annotated § 54-21-103 provides as follows:

No outdoor advertising shall be erected or maintained within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems in this state except the following:

(1) Directional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions that are authorized or required by law;
(2) Signs, displays and devices advertising the sale or lease of property on which they are located;
(3) Signs, displays and devices advertising activities conducted on the property on which they are located;

4

(4) Signs, displays and devices located in areas that are zoned industrial or commercial under authority of law and whose size, lighting and spacing are consistent with customary use as determined by agreement between the state and the secretary of transportation of the United States; and

(5) Signs, displays and devices located in unzoned commercial or industrial areas as may be determined by agreement between the state and the secretary of transportation of the United States and subject to regulations promulgated by the commissioner.

16.

Tennessee Code Annotated § 54-21-104(a), provides

Unless otherwise provided in this chapter, no person shall construct, erect, operate, use, maintain, or cause or permit to be constructed, erected, operated, used, or maintained, any outdoor advertising within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems without first obtaining from the commissioner a permit and tag.

17.

Tennessee Code Annotated § 54-21-107(a), provides:

The following outdoor advertising are [*sic*] exempt from § 54-21-104:

(1) Those advertising activities conducted on the property on which they are located;
(2) Those advertising the sale or lease of property on which they are located; and
(3) Those that are official as established under authority of any statute or regulation promulgated with respect to the outdoor advertising.

18.

Thus, Tennessee law makes it clear that if you are displaying signs that advertise the sale or lease of property on which they are located, or advertising activities conducted on the property on which they are located, you are not required to have a permit from TDOT for such signs, even if they are located within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems.

19.

TDOT's practices and policies with respect to the aforementioned statutes were largely established by former TDOT Commissioners.

20.

Current TDOT Commissioner John Schroer, in concert with Defendants Rienbold, Bowlan, Shelby, Gilliam, and Bible, has embarked on courses of action whereby the established practices and policies of TDOT are not utilized with respect to Mr. Thomas' applications and existing signs.

21.

Mr. Thomas currently has an outdoor advertising sign on his property located at 5207 Interstate 40 West in Memphis, Tennessee.  This sign is commonly referred to as the "Crossroads Ford" sign.

22.

Mr. Thomas' sign at Crossroads Ford displays exclusively noncommercial messages that convey the thoughts and ideas of Mr. Thomas.

23.

By way of example, from May of 2012 through the fall of 2012, the only content that was displayed on Mr. Thomas' sign was an American flag with the Olympic rings as a show of support for the U.S. Olympic team that competed at the 2012 Olympics in London, England.

24.

Beginning in the fall of 2012, Mr. Thomas' sign displayed content referencing the upcoming holiday season with a picture of the American Flag.

25.

These personal statements and messages are unquestionably noncommercial speech. Such speech is sponsored by Mr. Thomas, who controls the property where the sign is located.

26.

Therefore, such signs are exempt from permitting under Tennessee law.  See T.C.A. § 54-21-107(a)(1).

27.

Despite the fact that Plaintiff's sign is displaying exclusively the noncommercial speech and opinions of Mr. Thomas, Defendants sought to have the Crossroads Ford sign removed through an ongoing enforcement action in Chancery Court in Shelby County, Tennessee.  See Case No. CH-07-0454-1 (Shelby County Chan. Ct.).

28.

During this enforcement action, TDOT conceded that it had allowed similarly situated billboards that the Department alleged were illegal, to display noncommercial messages and be treated as exempt from TDOT regulation under T.C.A. § 54-21-107(a)(1).

29.

This ongoing enforcement action, which is being spearheaded by Defendants against Mr. Thomas, is a continuation of an adversarial relationship between Plaintiff and Defendants.

30.

Indeed, in Case No. CH-07-0454-1, the Chancery Court issued an injunction order in May of 2007, which included findings that there was "substantial evidence of selective and vindictive enforcement against the Defendant Thomas on behalf of the Plaintiff TDOT."

31.

Moreover, the court enjoined TDOT "from engaging in any further selective or vindictive enforcement acts with regard to Defendant and Counter-Plaintiff Thomas."

32.

While this injunction was later vacated on jurisdictional grounds rather than the merits, Defendants continue to pursue courses of action in a selective and vindictive manner towards Mr. Thomas and continue to subject Mr. Thomas' signs to enforcement actions that they do not apply to other owners of outdoor advertising signs.

33.

By way of example, in April of 2011, Defendants went so far as to forcibly remove two of Mr. Thomas' outdoor advertising signs – commonly referred to as the "Kate Bond" signs – during the pendency of a matter that is still being appealed by Mr. Thomas.

34.

After receiving the take-down order regarding the Kate Bond signs, Mr. Thomas wrote to TDOT to seek clarification regarding whether he could remove the advertising panels from the signs and be in compliance with the take-down order.

35.

In response to Mr. Thomas' inquiry, Defendants made a determination that, with respect to Mr. Thomas, the entirety of the sign structures at Kate Bond would have to be removed to comply with TDOT Rules and Regulations.

36.

In doing so, Defendants intentionally failed to disclose to Mr. Thomas that an established practice and policy existed that explicitly allowed the conversion of what had been an off-

premise commercial advertising display with no State permit to an on-premise advertising and/or noncommercial display, which is exempt from regulation by TDOT under T.C.A. § 54-21-107(a)(1).

37.

Ultimately, TDOT, through the individual Defendants, forcibly removed Mr. Thomas' signs at Kate Bond in October of 2011 without letting Mr. Thomas convert these signs to on-premise advertising signs as TDOT had done with other sign companies.

38.

Defendants also engaged in a similar course of conduct with respect to signs owned by Mr. Thomas in Fayette County, Tennessee.

39.

In 2008 and 2009, Defendants forcibly removed Mr. Thomas' signs in Fayette County without letting Mr. Thomas convert these signs to on-premise advertising signs as TDOT had done with other sign companies.

40.

The intentional failure of Defendants to disclose to Mr. Thomas the established policy in this regard violated Plaintiff's First Amendment rights and Equal Protection rights protected by the Tennessee Constitution and the U.S. Constitution.

41.

Defendants' disparate treatment of Mr. Thomas can further be seen through their handling of Plaintiff's outdoor advertising applications for signs located on property zoned Planned Unit Development ("PUD") in Shelby County, Tennessee.

42.

TDOT has had an established interpretation whereby it recognizes and issues permits for signs that are applied for on property that has been designated as a PUD.

43.

Such an interpretation is consistent with, and indeed required by 23 U.S.C. § 131(d) of the Federal Highway Beautification Act of 1965, which provides: "[w]henever a bona fide State, county, or local zoning authority has made a determination of customary use, such determination will be accepted."

44.

Shelby County and other Tennessee counties or local zoning authorities have made determinations regarding customary uses allowed in PUDs and TDOT has traditionally permitted outdoor advertising signs in PUDs in accordance with such determinations by local authorities.

45.

Despite TDOT's established positions, and the requirements of 23 U.S.C. § 131, Defendants have refused to issue Mr. Thomas permits for outdoor advertising displays on property designated as a PUD in Shelby County, Tennessee.

46.

Defendants' disparate treatment of Mr. Thomas is further demonstrated by their handling of Mr. Thomas' applications for State permits at locations in Fayette County, Tennessee, which also depart from TDOT's established practices.

47.

Despite the fact that TDOT previously issued State permits for four locations in Fayette County that were zoned commercial and renewed such permits for over 15 years for another

10

billboard company, Defendants refused to issue State permits to Mr. Thomas for the exact same locations.

48.

Defendants' disparate treatment of Thomas is further evidenced by the recent actions of Commissioner Schroer, with respect to the Kate Bond signs referenced above.

49.

Recently, an Administrative Law Judge issued an order against Mr. Thomas in the Kate Bond proceeding.  Mr. Thomas timely filed an appeal of this adverse decision, yet Commissioner Schroer is willfully and intentionally denying Mr. Thomas' right to pursue an appeal in accordance with due process.

50.

Commissioner Schroer's dissimilar treatment of Mr. Thomas can also be seen through his refusal to allow Mr. Thomas to appeal the denial of a motion to intervene in a matter even though the decisions being made by TDOT in the administrative proceeding at issue directly impact the rights of Mr. Thomas.

51.

Commissioner Schroer's refusal to allow Mr. Thomas to pursue appeals is contrary to the plain language of the rules, regulations, and statutes that govern the administrative proceedings and Mr. Thomas' due process rights as protected by the U.S. and Tennessee Constitutions.

52.

Despite the fact that TDOT forcibly removed Mr. Thomas' signs in Fayette County in 2008 and 2009, and forcibly removed Mr. Thomas's sign at Kate Bond in 2011, TDOT never pursued the recoupment of the costs and expenses associated with the removal.

53.

Recently, however, Commissioner Schroer, in direct retaliation against Mr. Thomas for seeking to protect his First Amendment rights through the filing of this action, brought an action against Mr. Thomas to the recoup costs and expenses associated with the forcible removal of Mr. Thomas' signs.  See Schroer v. Thomas, Case No. 14-306-I (Tenn. 20th Judicial Dist. Chancery Ct.).  Mr. Thomas, *pro se*, removed the case to federal court – Case No. 3:14-cv-0968 (M.D. Tenn.)).

54.

Through this enforcement action, TDOT seeks to recoup its costs and expenses for violating Mr. Thomas' First Amendment rights by forcibly removing Mr. Thomas' signs at Kate Bond and in Fayette County.

55.

Commissioner Schroer filed the aforementioned Chancery Court action in hopes of chilling Mr. Thomas' exercise of his First Amendment rights and deterring Mr. Thomas from pursuing this action.

56.

Commissioner Schroer's filing of the Chancery Court action is causally connected to Mr. Thomas' decision to pursue this action.

57.

Such outrageous, retaliatory conduct should be enjoined by this Court pending a resolution of Mr. Thomas' claims in this matter.

58.

The conduct described above conclusively shows that Defendants have denied Mr. Thomas equal protection under the law, due process rights, and rights to free speech protected by the U.S. and Tennessee Constitutions.

## FIRST CLAIM FOR RELIEF

## DEFENDANTS' CONDUCT VIOLATES PLAINTIFF'S FIRST AMENDMENT RIGHTS AND EQUIVALENT FREE SPEECH GUARANTEES UNDER THE TENNESSEE CONSTITUTION

59.

Plaintiff incorporates by reference the allegations in Paragraphs 1-58 above as if set forth verbatim herein.

60.

It is well established that under the First Amendment noncommercial speech, like the kind being displayed by Mr. Thomas on his Crossroads Ford sign, is entitled to greater protections under the First Amendment than commercial speech.

61.

Defendants' attempts to squelch Mr. Thomas' noncommercial speech rights through their enforcement actions are violations of Plaintiff's First Amendment rights.

62.

Well-established First Amendment case law has found that personal statements or messages like the ones being displayed by Mr. Thomas are entitled to the highest level of constitutional protection.

63.

State law establishes that even on-site commercial speech – much less on-site noncommercial messages like the type being displayed by Mr. Thomas at the Crossroads Ford location – is exempt from State permitting and regulation.

64.

Defendants' attempts to require the removal of Mr. Thomas' sign are in violation of his First Amendment rights and improperly favor commercial speech over noncommercial speech.

65.

Defendants' removal of Mr. Thomas' Kate Bond signs without allowing Plaintiff to display on-premise, noncommercial speech on the existing signs violated Mr. Thomas' First Amendment rights.  Based on Defendants' unlawful removal of the Kate Bond signs, there is a risk that Defendants will remove the Crossroads Ford sign.

66.

Similarly, Defendants' removal of Mr. Thomas' Fayette County signs without allowing Plaintiff to display on-premise, noncommercial speech on the existing signs violated Mr. Thomas' First Amendment rights.  Based on Defendants' unlawful removal of the Fayette County signs, there is a similar risk that Defendants will remove the Crossroads Ford sign.

67.

The First Amendment protects Mr. Thomas' right to petition the government for a redress of grievances through the courts.

68.

Mr. Thomas exercised those rights by filing this action against the individual Defendants for violating his constitutionally-protected rights as alleged herein.

69.

Upon information and belief, in March of 2014, Commissioner Schroer directed that an action be filed against Mr. Thomas in the Twentieth Judicial District Chancery Court for the State of Tennessee in retaliation for Mr. Thomas exercising his rights to petition this Court for redress of his grievances against Defendants.

70.

Defendants' motivation for filing the Chancery Court action, wherein they sought to pursue causes of action on which they had slept for over four years, was the fact that Mr. Thomas was pursuing this action against them.

71.

Through this recently filed Chancery Court action, Defendants are also attempting to deter Mr. Thomas from continuing to pursue this action to protect his rights.

72.

Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to compensation for the damages he has suffered as a result of Defendants' infringement upon his First Amendment rights and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert his and others' constitutional rights.

73.

The Tennessee Constitution in its Declaration of Rights protects freedom of speech as follows: "free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject . . . ."  Thus, Defendants' violations of Mr. Thomas' First Amendment rights also constitute violations of the Tennessee Constitution.

## SECOND CLAIM FOR RELIEF

## DEFENDANTS' CONDUCT VIOLATES PLAINTIFF'S EQUAL PROTECTION RIGHTS

74.

Plaintiff incorporates by reference the allegations in Paragraphs 1-58 above as if set forth verbatim herein.

75.

Defendants have knowingly engaged in an enforcement action against Mr. Thomas' sign at Crossroad Ford even though they are not actively attempting to remove similarly situated signs without State permits that display the same type of noncommercial content.

76.

Indeed, Defendants have allowed similarly situated owners of billboards, who owned signs that the Department alleged were illegal, to display noncommercial messages on the billboards in question and treated said billboards as exempt from TDOT regulation under T.C.A. § 54-21-107(a)(1).

77.

Such favoritism has denied Mr. Thomas equal protection under the law and violates the Fourteenth Amendment to the United States Constitution and equivalent provisions of the Tennessee Constitution.

78.

There is absolutely no rational basis for such differences in treatment by Defendants. Defendants' application of the same regulations – T.C.A. §§ 54-21-101, *et seq.* – to treat similarly situated sign owners differently violates Mr. Thomas' equal protection rights.

79.

Defendants intentionally and forcibly removed Mr. Thomas' Kate Bond and Fayette County signs even though TDOT had previously allowed similarly situated landowners and/or sign companies to convert off-premise outdoor advertising signs that did not have a TDOT permit to on-premise signs or noncommercial signs.   Such behavior has been threatened regarding the Crossroads Ford sign as well.

80.

Such favoritism has denied Mr. Thomas equal protection under the law and violates the Fourteenth Amendment to the United States Constitution and equivalent provisions of the Tennessee Constitution.

81.

There is absolutely no rational basis for such differences in treatment by Defendants. Defendants' departure from their prior interpretation of TDOT's Rules and Regulations in order to force the removal of Plaintiff's signs, and threaten removal of another sign, has violated Mr. Thomas' equal protection rights.

82.

Defendants' improper treatment of Plaintiff is further illustrated by the fact that, despite allowing other similarly situated sign owners to permit and operate outdoor advertising signs on property designated as a PUD in counties and cities in Tennessee, Defendants have taken the opposite approach with respect to Mr. Thomas' applications for outdoor advertising signs on property designated as a PUD.

83.

Such conduct not only violated 23 U.S.C. § 131(d), but this disparate treatment has denied Mr. Thomas equal protection under the law and violates the Fourteenth Amendment to the United States Constitution and equivalent provisions of the Tennessee Constitution.

84.

There is absolutely no legitimate basis for such differences in treatment by Defendants. Defendants' departure from their prior interpretation of TDOT's Rules and Regulations in order to deny Plaintiff's permits has violated Mr. Thomas' equal protection rights.

85.

Pursuant to 42 U.S.C. § 1983, Mr. Thomas is entitled to compensation for the damages he has suffered as a result of Defendants' equal protection violations and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert his constitutional rights.

THIRD CLAIM FOR RELIEF

INJUNCTIVE RELIEF

86.

Plaintiff incorporates by reference the allegations in Paragraphs 1-58 above as if set forth verbatim herein.

87.

Defendants' authority to regulate signs along federally-funded highways like those at issue in this case is derived from 23 U.S.C. § 131.

18

88.

Tennessee Code Annotated § 54-21-103, which is derived from the authority conferred

by 23 U.S.C. § 131, provides as follows:

No outdoor advertising shall be erected or maintained within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems in this state except the following:

(1) Directional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions that are authorized or required by law;
(2) Signs, displays and devices advertising the sale or lease of property on which they are located;
(3) Signs, displays and devices advertising activities conducted on the property on which they are located;
(4) Signs, displays and devices located in areas that are zoned industrial or commercial under authority of law and whose size, lighting and spacing are consistent with customary use as determined by agreement between the state and the secretary of transportation of the United States; and
(5) Signs, displays and devices located in unzoned commercial or industrial areas as may be determined by agreement between the state and the secretary of transportation of the United States and subject to regulations promulgated by the commissioner.

89.

Tennessee Code Annotated § 54-21-104(a), provides

Unless otherwise provided in this chapter, no person shall construct, erect, operate, use, maintain, or cause or permit to be constructed, erected, operated, used, or maintained, any outdoor advertising within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems without first obtaining from the commissioner a permit and tag.

90.

Tennessee Code Annotated § 54-21-107(a), provides:

The following outdoor advertising are [*sic*] exempt from § 54-21-104:

(1) Those advertising activities conducted on the property on which they are located;

(2) Those advertising the sale or lease of property on which they are located; and

(3) Those that are official as established under authority of any statute or regulation promulgated with respect to the outdoor advertising.

91.

Mr. Thomas' personal expressions and thoughts are (1) either activities that are conducted on the property where the sign is located, or (2) are messages that are entitled to such a high degree of constitutional protection that they may not be treated in any way as lesser than other messages, such as on-site commercial messages.

92.

Therefore, this Court should order Defendants to refrain from any further enforcement action against a sign that is exempt from regulation under the plain terms of the applicable statute and clear precedents of the U.S. Supreme Court.

93.

As noted previously herein, Defendants have recently filed an action against Mr. Thomas in Chancery Court seeking to recoup money from Mr. Thomas for conduct that is alleged to have violated Mr. Thomas' constitutional rights.

94.

Allowing Defendants to continue to pursue their retaliatory State court action to capitalize on constitutionally suspect conduct that is the subject of this action threatens to irreparably harm Mr. Thomas.

95.

Therefore, Defendants should be enjoined from continuing to pursue their action in Chancery Court until the conclusion of this matter.

WHEREFORE, Plaintiff William H. Thomas, Jr. prays:

(1)    For this Court to find that the Defendants have violated his free speech rights;

(2)    For this Court to find that the Defendants have violated his equal protection rights;

(3)    For a prospective declaration that his sign at Crossroads Ford is displaying on-premise, constitutionally protected speech that is exempt from the permitting requirements of T.C.A. § 54-21-104;

(4)    For prospective injunctive relief preventing Defendants from continuing to pursue their Chancery Court action against Mr. Thomas until this matter is concluded;

(5)    For an award of such damages, including punitive damages against the Individual Defendants, as are authorized by law;

(6)    For an award against the Defendants, pursuant to 42 U.S.C. § 1988, of all reasonable costs and attorneys' fees incurred by Plaintiff in defending its constitutional rights;

(7)    For a trial by jury on any issue that should not be resolved by the Court as a matter of law; and

(8)    For such other and further relief as the Court may deem just and equitable.

DATED this 1st day of October, 2014.

Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

/s/ E. Adam Webb
E. Adam Webb (Ga. Bar No. 743910)
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
Phone:        (770) 444-0773
Fax:           (770) 217-9950
Email:  Adam@WebbLLC.com

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone:        (901) 529-7996
Fax:           (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day served the foregoing by uploading a copy to the

Court via the CM/ECF system, which will send a copy of the same to the following:

Dawn Jordan, Esq.
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
Email: dawn.jordan@ag.tn.gov

DATED this 1st day of October, 2014.

*/s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.