**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| WILLIAM H. THOMAS, JR., | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| JOHN SCHROER, Commissioner of | ) |
| Tennessee Department of | ) |
| Transportation, in his | )   No. 2:13-cv-02987-JPM-cgc |
| official and individual | ) |
| capacity; and JOHN REINBOLD; | ) |
| PATTI BOWLAN; ROBERT SHELBY; | ) |
| SHAWN BIBLE; and CONNIE | ) |
| GILLIAM, in their individual | ) |
| capacities, | ) |
|     Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL
DISMISSAL OF SECOND AMENDED COMPLAINT**

Before the Court is Defendants' motion for partial dismissal of second amended complaint, filed October 28, 2014. (ECF No. 46.) Plaintiff Thomas filed a response on November 28, 2014. (ECF No. 57.) The parties filed supplemental briefing on December 15, 2015. (ECF Nos. 64-65.) For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for partial dismissal of second amended complaint.

**I. BACKGROUND**

This case concerns alleged violations of Plaintiff William H. Thomas Jr.'s constitutional rights. Thomas alleges the Tennessee Department of Transportation (TDOT) violated his

First, Fifth, and Fourteenth Amendment rights when it removed certain of Thomas' billboards and signs displaying noncommercial content pursuant to the Billboard Regulation and Control Act of 1972 ("Billboard Act"), as set forth at Tennessee Code Annotated §§ 54-21-101 to -123 (2008). Thomas asserts that signs displaying noncommercial content are exempt from permitting pursuant to Tenn. Code Ann. § 54-21-107(a)(1).

### A. Procedural Background

On December 17, 2013, Thomas filed a complaint against all Defendants. (ECF No. 1.) On February 3, 2014, Defendants filed their first motion to dismiss for lack of jurisdiction. (ECF No. 12.) Defendants moved to dismiss, inter alia, claim no. 4 for declaratory relief as to the Crossroads Ford sign. (Id. at 1.) On March 10, 2014, Defendants filed their answer to the initial complaint. (ECF No. 17.) The Court granted Thomas leave to amend the complaint as to the claim for retaliation, and dismissed as moot in part Defendants' motion to dismiss. (ECF No. 34.) Thomas filed an amended complaint on October 1, 2014. (ECF No. 38.)

On October 10, 2014, Thomas filed an emergency motion for temporary restraining order. (ECF No. 39.) On October 13, 2014, Defendants filed a motion for dismissal of amended complaint. (ECF No. 40.) The Court denied Thomas' emergency motion for

temporary restraining order as moot on October 15, 2014. (ECF
No. 43.)

On October 27, 2014, Thomas filed a second amended
complaint. (ECF No. 45.) Defendants filed the instant motion
for partial dismissal of the second amended complaint on October
28, 2014. (ECF No. 46.) Thomas responded in opposition to
Defendants' motion to dismiss on November 28, 2014. (ECF No.
57.) The parties filed supplemental briefing on December 15,
2014. (ECF Nos. 64-65.)

On May 22, 2015, Thomas filed two motions to compel
discovery and a motion to amend the existing scheduling order.
(ECF Nos. 86-88.) On May 22, 2015, Thomas' counsel filed a
motion to withdraw as attorney (ECF No. 85), which the Court
granted on June 15, 2015 (ECF No. 103). Thomas now proceeds pro
se in the case. Thomas' motions to compel were referred to the
Magistrate Judge for determination on June 19, 2015. (ECF Nos.
106-07.)

On June 10, 2015, Thomas filed an Emergency Motion for
Temporary Restraining Order ("TRO"), seeking to prevent
Defendants from removing his sign at the Crossroads Ford
location. (ECF No. 96.) Thomas sought to enjoin Defendants
from executing any judgments "resulting [from] or associated
with the Crossroads Ford billboard sign until such time as a
hearing can be held on the issues . . . ." (Id. at 1.) On June

11, 2015, Defendants filed a response in opposition to the motion for TRO.  (ECF No. 99.)  On June 18, 2015, a motion hearing was held regarding the TRO motion.  (ECF No. 104.)  On June 24, 2015, the Court entered an order granting Thomas' motion for emergency temporary restraining order.  (ECF No. 110.)

On July 8, 2015, Defendants filed supplemental briefing in opposition to issuance of a preliminary injunction.  (ECF No. 118.)  Thomas filed a reply brief in support of a preliminary injunction on July 13, 2015.  (ECF No. 124.)  The Court held a preliminary injunction hearing on July 14, 2015.  (ECF No. 125.)  On September 8, 2015, the Court entered an order granting a preliminary injunction.  (ECF No. 163.)

**B.  Factual Background**

Thomas is the owner of various tracts of real property at various locations in the State of Tennessee. (ECF No. 45 ¶ 10.) Thomas is in the business of posting outdoor advertising signs for the display of commercial and noncommercial messages.  (Id. ¶ 11; ECF No. 79 ¶ 11.)  Thomas alleges that on several occasions, he has used outdoor advertising signs located on property in which he possesses a property interest, for the display of noncommercial messages. (ECF No. 45 ¶ 12.)

TDOT has the responsibility of promulgating and enforcing regulations related to billboards and outdoor advertising signs

4

under the Billboard Act. (Id. ¶ 13; ECF No. 79 ¶ 13.) The State of Tennessee and TDOT are authorized to regulate billboards and outdoor advertising signs pursuant to the Federal Highway Beautification Act of 1965 ("HBA"), as amended. (ECF No. 45 ¶ 14; ECF No. 79 ¶ 14.)

Thomas alleges that Defendants "[have] embarked on courses of action whereby the established practices and policies of TDOT are not utilized with respect to Mr. Thomas' applications and existing signs." (ECF No. 45 ¶ 20.) Thomas argues that the personal statements and messages on his billboards are noncommercial speech, and therefore are exempt from permitting under Tennessee law because Thomas controls the property where the signs are located. (Id. ¶¶ 22-26.)

In 2008 and 2009, Defendants removed Thomas' signs located in Fayette County (the "Fayette County signs"). (Id. ¶ 39; ECF No. 79 ¶ 39.) Defendants removed two of Thomas' outdoor advertising signs—referred to as the "Kate Bond signs" in April and October of 2011. (ECF No. 45 ¶¶ 33, 37; ECF No. 79 ¶¶ 33, 37.) In October 2014, Defendants removed another of Thomas' outdoor signs (the "Perkins Road sign"). (ECF No. 45 ¶ 40; ECF No. 79 ¶ 40.) Thomas alleges that the Perkins Road sign "was displaying exclusively on-premise, non-commercial content" at the time of removal. (ECF No. 45 ¶ 40.)

Defendants sought to have the Crossroads Ford sign removed through an ongoing enforcement action in Chancery Court in Shelby County, Tennessee. (ECF No. 45 ¶ 27; ECF No. 79 ¶ 27.) Thomas alleges that this ongoing enforcement action is a continuation of an adversarial relationship between the parties. (ECF No. 45 ¶ 29.) Indeed, the Chancery Court issued an injunction order in May of 2007, which included findings that there was "'substantial evidence of selective and vindictive enforcement against the Defendant Thomas' by TDOT." State ex rel. Com'r of Dep't of Transp. v. Thomas, 336 S.W.3d 588, 595 (Tenn. Ct. App. 2010). The Chancery Court enjoined TDOT "from engaging in any further selective or vindictive enforcement acts with regard to Defendant and Counter-Plaintiff Thomas." (ECF No. 45 ¶ 31; ECF No. 79 ¶ 31.) Thomas alleges, "During this enforcement action, TDOT conceded that it had allowed similarly situated billboards, that the Department initially alleged were illegal, to display non-commercial messages and thereafter be treated as exempt from TDOT regulation under T.C.A. § 54-21-107(a)(1)." (ECF No. 45 ¶ 28.) Defendants deny this allegation (ECF No. 79 ¶ 28), and the Chancery Court's injunction was later vacated on jurisdictional grounds (ECF No. 45 ¶ 32; ECF No. 79 ¶ 32).

Thomas also asserts that "Defendants have refused to issue [him] permits for outdoor advertising displays on property

6

designated as a [Planned Unit Development] ("PUD") in Shelby County[, Tennessee]" even though such permits have traditionally been granted and are required by the HBA. (ECF No. 45 ¶¶ 43-47.)

Thomas asserts that he received a letter on May 26, 2015, from George Boyte on behalf of TDOT and Defendant Schroer, which stated that Thomas must remove the sign structure at the Crossroads Ford location by June 26, 2015. (ECF No. 96 at 4.) Thomas asserts he received an additional letter on June 1, 2015, from George Boyte on behalf of TDOT and Defendant Schroer, which stated that they would be seeking an order from Chancellor Evans in Shelby County Chancery Court, granting them permission to forcibly remove the sign structure at Crossroads Ford. (Id. at 4-5.) Thomas asserts that he received an Application for Entry of Judgment Declaring a Public Nuisance and Injunction for Removal of Unlawful Billboard on June 5, 2015, from George Boyte on behalf of Defendants and TDOT wherein they seek to have the billboard at Crossroads Fords declared a public nuisance and have it forcibly removed. (Id. at 5.)

Thomas alleges that Defendants, in their individual capacities, violated his First Amendment rights and equivalent free speech guarantees under the Tennessee Constitution. (ECF No. 45 ¶¶ 61-72.) Thomas alleges that Defendants retaliated in violation of his First Amendment rights. (Id. ¶¶ 73-79.)

Thomas fears that "[b]ased on Defendants' unlawful removal of the Kate Bond signs, there is a risk that Defendants will remove the Crossroads Ford sign." (Id. ¶ 67.) Consequently, Thomas seeks a declaratory judgment against Defendant Schroer in his official capacity. (Id. ¶¶ 93-102.) Thomas also alleges that Defendants in their individual capacities violated his equal protection rights under the Fourteenth Amendment (Id. ¶¶ 80-92).

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

> In assessing a complaint for failure to state a claim, [a court] must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 790 (6th Cir. 2012) (second alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Williams v. Duke Energy Int'l, 681 F.3d 788, 799 (6th Cir. 2012)

(quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

The Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (alteration in original) (citation omitted) (internal quotation marks omitted); see also Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 157 (6th Cir. 2014) ("[A] complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (alteration in original) (quoting McPherson v. Kelsey, 125 F. 3d 989, 995-96 (6th Cir. 1997)).

> When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.

<u>Bassett v. Nat'l Collegiate Athletic Ass'n</u>, 528 F.3d 426, 430

(6th Cir. 2008).

## III. ANALYSIS

Defendants challenge Thomas' second amended complaint on

the following grounds: 1) running of the statute of limitations;

2) application of the doctrine of res judicata; 3) insufficiency

of Thomas' First Amendment claims; 4) insufficiency for claims

of retaliation; 5) qualified and quasi-judicial immunity;

6) unavailability of claims under the Tennessee Constitution;

and 7) Eleventh Amendment prohibition of injunctive and

declaratory relief as to state-law claims. (ECF No. 47.)

### A. Statute of Limitations

The Supreme Court instructs that

> [w]here a federal statute provides a cause of
> action but does not specify a limitations period,
> courts determine the appropriate statute of
> limitations in one of two ways. First, if the federal
> cause of action arises under an Act of Congress
> enacted after December 1, 1990, it is governed by 28
> U.S.C. § 1658, which prescribes a four-year statute of
> limitations period. <u>Jones v. R.R. Donnelley & Sons
> Co.</u>, 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L. Ed. 2d
> 645 (2004). Alternatively, courts borrow the most
> analogous state limitations period, so long as the
> application of state law is not "at odds with the
> purpose or operation of federal substantive law."

<u>McCormick v. Miami Univ.</u>, 693 F.3d 654, 662 (6th Cir. 2012)

(quoting <u>North Star Steel Co. v. Thomas</u>, 51 U.S. 29, 34 (1995)).

Section 1983 does not specify a limitations period, <u>Owens v.

Okure</u>, 488 U.S. 235, 239 (1989), and is the codification of § 1

of the Civil Rights Act of 1871, Wilson v. Garcia, 471 U.S. 261, 262 (1985).  Consequently, the applicable statute of limitations for a § 1983 claim is the most analogous state limitations period.  See McCormick, 693 F.3d at 662; Holson v. Good, 579 F. App'x 363, 366 (6th Cir. 2014) (applying Ohio statute of limitations to § 1983 claim).  Under Tennessee law, "civil actions brought under the federal civil rights statutes shall be commenced within one year after the cause of action accrued," pursuant to Tenn. Code Ann. § 28-3-104. Jackson v. Richards Med. Co., 961 F.2d 575, 578 (6th Cir. 1992).

Additionally, federal law determines when a claim begins to accrue.  Harrison v. Michigan, 722 F.3d 768, 772-73 (6th Cir. 2013), cert. denied, 134 S. Ct. 1023 (2014).  Under federal law, accrual commences at the time "the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996).

Defendants argue that the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104 bars Thomas' claims related to the Kate Bond and Fayette County signs.  Defendants assert that claims related to the Kate Bond and Fayette County signs began to accrue "on the date the signs were removed." (ECF No. 47 at 11.)  Defendants further assert that the allegations in the second amended complaint establish that

removal of those signs occurred more than one year prior to the filing of the initial complaint on December 17, 2013. (Id.)

Thomas argues that Defendants' assertion that the claims related to the Kate Bond and Fayette County signs began to accrue at the time of removal is unsupported by case law. (ECF No. 57 at 11.) Thomas asserts that "the fact that there is still an active state court proceeding pending regarding [the Kate Bond] signs" shows that his claims are not time-barred. (See id. at 12.) Additionally, Thomas states that "the gravamen of [his] First Amendment claim and equal protection claim is Defendants' conduct regarding the Crossroads Ford sign and Perkins Road sign." (Id. at 11.)

The Court agrees with Defendants that Tenn. Code Ann. § 28-3-104 sets the limitations period for Thomas' § 1983 claims. See Jackson, 961 F.2d at 578. Thomas' First Amendment and equal protection claims both rely in part on the removal of the Fayette County and Kate Bond signs. (See ECF No. 45 ¶¶ 67-68, 86.)

Additionally, Thomas alleges that Defendants forcibly removed the Kate Bond signs in April and October of 2011. (ECF No. 45 ¶¶ 33, 37.) Thomas further alleges that Defendants forcibly removed the Fayette County signs in 2008 and 2009. (Id. ¶ 39.) Because Thomas filed the initial complaint in the present action on December 17, 2013 (see ECF No. 1), removal of

the Fayette County and Kate Bond signs fall outside the one-year statute of limitations. Consequently, Thomas' First Amendment and equal protection claims that are based on the removal of the Fayette County and Kate Bond signs are time-barred.[1]

Thomas' claim for retaliation, however, does not depend on the removal of the Fayette County and Kate Bond signs. Instead, that claim is premised on the Commissioner's filing of a recoupment action against Thomas in the Twentieth Judicial District Chancery Court for the State of Tennessee. (ECF No. 45 ¶ 76.) Accepted as true, Thomas would not have reason to know the grounds for retaliation until the filing date of the recoupment action in March 2014. (See id.) Because the alleged filing date falls within a year of the filing of the instant action, Thomas' claim for retaliation is not time-barred as a matter of law.

Accordingly, Thomas' First Amendment and equal protection claims that are based on the removal of the Fayette County and Kate Bond signs are hereby dismissed with prejudice.

---

[1] Although not argued by Defendants, Thomas may have had reason to know of the basis of his First Amendment and equal protection claims upon TDOT's denial of permits for the relevant signs. Because removal of the Fayette County and Kate Bond signs occurred more than one year prior to filing of the instant action, the Court need not determine whether accrual began at an earlier date.

**B.   Res Judicata**

A successful claim of res judicata "extinguish[es] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650 (6th Cir. 2007) (internal quotation marks omitted).  "[W]hen considering the preclusive effect of a state court judgment, [the Court] must look to the law of that state."  Id.  To succeed on a claim of res judicata, the plaintiff must establish the following elements:

> (1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.

Id. at 650 n.4 (internal quotation marks omitted).

Defendants assert that the doctrine of res judicata precludes Thomas' claims that "pertain[] to the removal of the Kate Bond and Fayette County signs." (ECF No. 47 at 12.) Because the Court has ruled that claims based on the removal of the Kate Bond and Fayette County signs are time-barred, supra Part III.A, the Court finds it unnecessary to reach the issue of whether those claims are also barred under the doctrine of res judicata.

Defendants also assert that Thomas' claims that relate to the Perkins Road sign are barred by the doctrine of res judicata. (ECF No. 47 at 13.) Defendants contend that "[i]f plaintiff believed that the defendants' actions were in fact violative of his Constitutional rights, he could have and should have raised that in the state court action. Since he did not, he is now barred from raising that as an issue here." (Id.)

Defendants' res judicata defense regarding the Perkins Road sign fails as to the second and third elements. With regard to the second element, the individual Defendants in the instant case are dissimilar from the parties in the state court cases. As Defendants argued in their response in opposition to Thomas' first motion amend his complaint,

> [n]one of the defendants in this case are parties in the Davidson Chancery case. [See, Exhibit 1]. The only parties in that matter are Commissioner Schroer in his official capacity only and William H. Thomas, Jr. [Exhibit 1]. Plaintiffs do not name Commissioner Schroer in his official capacity in this suit.

(ECF No. 23 at 6 (alterations in original).) Defendants further argued that

> Section 1983 only authorizes the imposition of liability against [e]very "person" who, acting under color of state law, violated another person's rights. As a matter of law, the term "person" in 42 U.S.C. § 1983 does not include states, state agencies, or state employees sued in their official capacities. Will, 491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d at 58; Howlett v. Rose, 496 U.S. 356, 365, 100 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). While "state officials literally are persons, . . . a suit against

15

> the official in his or her official capacity is not a
> suit against the official but rather is a suit against
> the official's office.  As such, it is no different
> from a suit against the state itself." <u>Will</u>, 491 U.S.
> at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d 45.

(ECF No. 23 at 6-7.)  Accordingly, Defendants have not established the second res judicata element as to the individual Defendants.

Commissioner Schroer, however, has been added in his official capacity as a named defendant in the second amended complaint.  (<u>See</u> ECF No. 45 ¶ 2.)  Consequently, Defendants have satisfied the second element as to claims against Commissioner Schroer in his official capacity.

Defendants' res judicata defense fails as to the third element with regard to Commissioner Schroer in his official capacity.  In the relevant state court proceedings, Thomas filed a counterclaim alleging constitutional violations against TDOT officials, which included Commissioner Schroer in his official capacity.  <u>Com'r of Dep't of Transp. v. Thomas</u>, 336 S.W.3d at 593-94, 605.  The Court of Appeals found that the Chancery Court lacked subject matter jurisdiction to hear the counterclaim against Commissioner Schroer and TDOT.  <u>Id.</u> at 608.  Consequently, the Shelby County Chancery Court was not a Court of competent jurisdiction and there was no final determination of Thomas' constitutional claims on the merits in the relevant state court proceedings.

Because Defendants' res judicata arguments fail to establish the second and third elements of a res judicata defense, the Court need not reach the fourth element. Accordingly, the Court finds that res judicata does not bar any claims regarding the Perkins Road sign.

## C. First Amendment Violations

Defendants argue that the Billboard Act and the on-premise exemption provided therein are facially content-neutral. (ECF No. 47 at 7.) Consequently, Defendants contend, the Billboard Act is subject to reasonable time, place and manner restrictions. (See id. at 6-7.) Defendants aver that the Billboard Act is narrowly tailored because "there are ample other means of communication that are available." (Id.) Defendants assert that the Billboard Act serves significant governmental interests of driver safety and preservation of the aesthetic beauty of state highways. (Id.) Thomas contends that his signs are exempt from regulation under the on-premise exemption because they display noncommercial speech. (ECF No. 57 at 3-4.)

In its Order Granting Preliminary Injunction, the Court analyzed the likely unconstitutionality of the Billboard Act. (ECF No. 163.) For the purpose of this Rule 12(b)(6) motion, the Court assumes that the Billboard Act is constitutional. The Court, therefore, need not address in this order the

constitutionality of the Billboard Act as a reasonable time, place, and manner restriction that survives strict scrutiny. Moreover, as to the instant motion, Thomas does not seek to challenge Defendants' argument on the issue of whether the Billboard Act is a reasonable time, place, and manner restriction. (ECF No. 57 at 3-4.) Rather, Thomas alleges that Defendants have restricted his speech by requiring billboard permits for the Crossroads Ford and Perkins Road locations when those billboards are exempt under the on-premise exception in § 54-21-107(a)(1). (ECF No. 45 ¶¶ 22-26, 40.) These allegations are supported by specific facts that are sufficient under Iqbal and Twombly, and therefore, Thomas' First Amendment claims cannot be dismissed.

Both parties agree that Defendants seek to remove the Crossroads Ford billboard and have removed the Perkins Road billboard because Thomas lacks permits for those locations. (ECF No. 45 ¶¶ 27, 40; ECF No. 79 ¶¶ 27, 40.) Thomas argues that those billboards are exempt from permitting because they display noncommercial, on-premise content. (ECF No. 45 ¶¶ 22, 25-26, 40.) For example, Thomas asserts that in the fall of 2012, the Crossroads Ford billboard displayed an American flag and referenced the holiday season. (Id. ¶ 24.) He argues that such displays of his "personal expressions . . . are, by definition,

located on the premises ([his] property) of the message ([his] thoughts)." (ECF No. 57 at 7.)

Defendants assert that Thomas' billboards are not exempt under the Billboard Act because an exempt billboard must be "(1) located on the same premises as the activity advertised; and (2) have as its purpose the identification of the activity conducted or product sold there or the sale or lease of the property on which it is located." (ECF No. 47 at 8.) Defendants argue that Thomas' billboards do not advertise any activity or product and therefore do not meet the requirements of an on-premise sign. (Id.)

Advertising, however, is not limited to commercial activities. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981) (requiring commercial billboard advertising and noncommercial billboard advertising be subject to the same regulations); Midwest Media Prop., L.L.C., v. Symmes Twp., Ohio, 503 F.3d 456, 466 (6th Cir. 2007) ("the sign regulations clearly distinguish different types of speech--including political, commercial, and noncommercial"). Noncommercial speech such as expressions of one's thoughts can be an advertised activity.

Moreover, Thomas cites case law that classifies noncommercial advertising as inherently on-premise because "[a]n idea, unlike a product, may be viewed as located wherever the idea is expressed, i.e., wherever the speaker is located . . .

19

[or] wherever the speaker places it." (ECF No. 57 at 5 (quoting Southlake Prop. Assocs., Ltd. v. City of Morrow, 112 F.3d, 1114, 1119 (11th Cir. 1997).) Although this Court is not required to apply Eleventh Circuit precedent, the reasoning in Southlake is sufficiently persuasive for Thomas' First Amendment claims to survive Defendants' Rule 12(b)(6) challenge.

If the Court were to operate under the assumption that the Billboard Act is unconstitutional, the outcome on Defendants' motion to dismiss would remain the same. His First Amendment claims would not be dismissed because the statute pursuant to which Defendants were operating when they removed or sought to remove Thomas' billboards would no longer be in effect. Thus, Thomas' argument would not be that his billboards qualified as on-premise signs under the Billboard Act exception, but rather that, in the absence of the Billboard Act, his billboards were not subject to regulation.

Therefore, whether the Billboard Act is constitutional or not, the Court finds that Thomas has sufficiently alleged facts to support his First Amendment claims. Accordingly, Defendants' motion to dismiss Thomas's First Amendment claims is denied.

### D. Retaliation

"[A]dverse state action motivated at least in part as a response to the exercise of the plaintiff's constitutional rights presents an actionable claim of retaliation." Barnes v.

Wright, 449 F.3d 709, 718 (6th Cir. 2006) (internal quotation marks omitted).  "[W]here constitutionally protected speech is a motivating factor in governmental action adverse to the plaintiff, the adverse action is unconstitutional (assuming the requisite degree of seriousness) unless the same action would have been taken even in the absence of the protected conduct." Id. (internal quotation marks omitted).

A First Amendment retaliation claim requires the plaintiff to establish the following elements:

> (1) that there was constitutionally-protected conduct; (2) an adverse action by defendants sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first and second elements--that is, the adverse action was motivated at least in part by plaintiff's protected conduct.

Eckerman v. Tenn. Dep't of Safety, 636 F.3d 202, 207 (6th Cir. 2010).  Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999).

To succeed on a retaliation claim for malicious prosecution, the plaintiff must also show a lack of probable cause.  Barnes, 449 F.3d at 720.  "Probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime" or liable in a civil suit.  See Hill v.

21

<u>White</u>, 190 F.3d 427, 431 (6th Cir. 1999). "The existence of probable cause does not depend upon a subjective assessment of the defendant's mental state, but instead is determined solely from an objective examination of the surrounding facts and circumstances." <u>Id.</u> (internal quotation marks omitted). The burden is on the plaintiff to prove a lack of probable cause. <u>Id.</u>

Defendants argue that Thomas cannot establish a lack of probable cause because the Chancery Court and the Court of Appeals of Tennessee already determined that Thomas' signs were illegal. (<u>See</u> ECF No. 47 at 14.) Defendants further argue that TDOT was within its rights to recoup its costs for removing the illegal signs under Tenn. Code Ann. § 54-21-105. (ECF No. 47 at 14-15.) Defendants further argue that the only Defendant in the instant case that is party to the Chancery Court case for recoupment of costs is Commissioner Schroer. (<u>Id.</u> at 15.) Defendants contend that Thomas' allegations against Commissioner Schroer for retaliation are conclusory and fail under Rule 12(b)(6). (ECF No. 47 at 15.)

Thomas argues that his filing of the instant lawsuit is protected conduct under the First Amendment. (ECF No. 57 at 15.) Additionally, Thomas asserts that he has sufficiently alleged that the filing of the Chancery Court action for recoupment "would chill an ordinary person from continuing to

pursue their claims against Defendants." (Id. (citing ECF No. 45 ¶¶ 55-59, 77-78).) Thomas also asserts that the second amended complaint "plainly alleges the adverse action taken by Defendants was motivated at least in part by Mr. Thomas' exercise of a protected activity." (Id. (citing ECF No. 45 ¶¶ 58, 77).) Thomas avers that even though Defendants have asserted that they would have taken the same action regardless of whether Thomas filed the instant lawsuit, Thomas' allegations that Defendants' actions were motivated by Thomas' protected conduct controls at the pleadings stage of a case. (Id. (citing In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009); Newsome v. Holiday Inn Express, 803 F. Supp. 2d 836, 839 (W.D. Tenn. 2011)).) Thomas does not address Defendants' argument that he has failed to demonstrate a lack of probable cause.

The Court agrees with Thomas that his allegations satisfy the first and third elements of a retaliation claim. With regard to the first element, Thomas has alleged retaliation in response to his filing of the instant case. The filing of a lawsuit to enforce one's constitutional rights is a protected activity under the First Amendment. Eckerman, 636 F.3d at 208 ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment.").

With regard to the third element,

> [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

Thaddeus-X, 175 F.3d at 399. In the second amended complaint, Thomas alleges that "Defendants' motivation for filing the Chancery Court action . . . was the fact that Mr. Thomas was pursuing this action against them." (ECF No. 45 ¶ 77.) Thomas further alleges that Defendants decided to file the Chancery Court action for recoupment of costs after they had slept on those causes of action for over four years. (Id.) These allegations, accepted as true and viewed in a light most favorable to Thomas, are sufficient to establish that Thomas' filing of the instant case was the motivation for the Chancery Court action. Additionally, Defendants have not argued that they or Commissioner Schroer would have filed the Chancery Court action in the absence of Thomas' pursuance of the instant case. (See ECF No. 47.) Accordingly, Thomas has established the third element under Rule 12(b)(6).

Thomas, however, fails to allege facts sufficient to establish the deterring effect and lack of probable cause as to the filing of the March 2014 Chancery Court action for

recoupment of costs.  To establish deterrence, Thomas must
allege facts sufficient to

> show the actions were "capable of deterring a person
> of ordinary firmness from exercising his or her
> right[s]."  Id. at 398.  A chilling effect sufficient
> under this prong is not born of de minimis threats or
> "inconsequential actions," but neither does the
> requisite showing permit "solely egregious retaliatory
> acts . . . to proceed past summary judgment."  Id.

Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro, 477

F.3d 807, 822 (6th Cir. 2007) (quoting Thaddeus-X, 175 F.3d at

398).  Thomas' sole allegations as to deterrence are:

1) "Commissioner Schroer filed the aforementioned Chancery Court

action in hopes of chilling Mr. Thomas' exercise of his First

Amendment rights and deterring Mr. Thomas from pursuing this

action"; and 2) "Through this recently-filed Chancery Court

action, Defendants are also attempting to deter Mr. Thomas from

continuing to pursue this action to protect his rights."  (ECF

No. 45 ¶¶ 57, 78.)  These allegations are conclusory and

unsupported by factual allegations in the second amended

complaint.  Consequently, under Iqbal and Twombly, these

allegations fail to establish that the Chancery Court filing

would "deter a person of ordinary firmness from continuing to"

pursue the instant lawsuit.  See Eckerman, 636 F.3d at 207.

With regard to lack of probable cause, the Court is unable

to locate a single factual allegation that relates to this

element.  Even assuming that the sole motivation for filing the

Chancery Court action was to deter Thomas from proceeding with the instant case, Thomas' complaint still fails to state a claim upon which relief can be granted. Under § 54-21-105(b),

> If advertising content is placed on the device during any extended period, the device may be immediately removed by the commissioner without further notice. The owner of the structures shall be liable to the state for damages equal to three (3) times the cost of removal, in addition to any other applicable fees, costs or damages, but the owner of the land on which the sign is located shall not be presumed to be the owner of the sign simply because it is on the owner's property.

Thomas does not dispute Defendants' assertion that the legality of the Fayette County and Kate Bond signs at issue in the March 2014 Chancery Court action for recoupment and their removal was previously determined in separate state court proceedings. (See ECF Nos. 45, 57; see also ECF No. 64-2 (collecting cases), ECF No. 135-1 (Defendant's Complaint in the March 2014 Chancery Court action).) Thomas also does not contest that those signs that were removed were displaying content at the time of their removal. (See ECF No. 57.) Rather, Thomas admits that the Perkins Road sign displayed noncommercial content at the time it was removed and indicates that the Kate Bond and Fayette County signs displayed commercial content at the time of their respective removal by alleging that those signs were forcibly removed "without allowing Plaintiff to display on-premise, noncommercial speech on the existing signs . . . ." (ECF No. 45

¶¶ 37-40, 67-70.)  Consequently, the express language of

§ 105(b) of the Billboard Act authorized Commissioner Schroer to

file the suit to recover the costs of removing those signs and

other related damages.  Under these circumstances, Thomas has

not alleged any fact that would shed doubt on whether

Commissioner Schroer had probable cause to pursue the lawsuit.

For these reasons, Thomas' retaliation claim is hereby

dismissed with prejudice.

### E.    Immunity

Defendants argue that they are entitled to qualified

immunity with regard to Thomas' First Amendment, equal

protection and retaliation claims, and quasi-judicial immunity

with regard to Thomas' claims that are based on removal of the

Perkins Road sign.[2]  Because Thomas' claim for retaliation is

dismissed with prejudice, the Court does not consider whether

Defendants are also entitled to qualified immunity from that

claim.

### 1.    Qualified Immunity

"The doctrine of qualified immunity protects government

officials from liability for civil damages insofar as their

---

[2] In a previous action, Thomas brought First and Fourteenth Amendment claims
against TDOT for alleged unlawful enforcement of the Billboard Act.
Complaint at 11-15, Thomas v. Tenn. Dep't of Transp., No. 2:13-CV-02185 (W.D.
Tenn. Mar. 25, 2013), ECF No. 1.  The Sixth Circuit affirmed this Court's
dismissal of the case.  Thomas v. Tenn. Dep't of Transp., 579 F. App'x 331,
332 (6th Cir. 2014).  Thomas' claims against TDOT were barred by the Eleventh
Amendment and Thomas' was not permitted to add TDOT officials as defendants
because his motion to amend was untimely.  Id.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity is a question of law for the Court. Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (internal quotation marks omitted).

Where qualified immunity is claimed in a Rule 12(b)(6) motion, the court must determine 1) whether the facts alleged in the complaint "make out a violation of a constitutional right"; and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232. "We sometimes apply a third step to 'increase the clarity' of the analysis which asks 'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" Leavey v. City of Detroit, 467 F. App'x 420, 430 (6th Cir. 2012) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 311 n.2 (6th Cir. 2005)); see also Holzemer v. City of Memphis, 621 F.3d 512, 519 (6th Cir. 2010). "'Once the qualified immunity defense is raised, the burden is

on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.'" Moldowan v. City of Warren, 578 F.3d 351, 375 (6th Cir. 2009) (quoting Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006)).

### i. Immunity from First Amendment Claims

Defendants argue that they are entitled to qualified immunity because they removed Plaintiff's signs and denied Plaintiff's permits pursuant to "a statute and a Rule that guide the Defendants as to placement of signs that are permissible." (ECF No. 47 at 10.) Defendants further assert that "Plaintiff has not cited to any case that would tell the Defendants that their conduct violates his rights," and "there is a Sixth Circuit case that has held that a similar Billboard Act is constitutional--Wheeler v. Commissioner of Highways, Commonwealth of Kentucky, 822 F.2d 586, 590-91 (6th Cir. 1987)." (Id.)

Thomas argues that the alleged facts establish violations of the First Amendment. (ECF No. 57 at 9-10.) Thomas asserts that "the right at issue has been clearly established for over 30 years." (Id. at 10.) Thomas avers,

> The holding of the Chancery Court in the Crossroad[s] Ford case, coupled with the Supreme Court's decision in Metromedia and the many subsequent follow-on decisions, including those from the Sixth Circuit, establish that signs like Mr. Thomas' must be exempt from the permitting requirements of T.C.A. § 54-21-107(a)(1) both because they are on-premise in

nature and because an on-premise commercial message is
undeniably also exempt.

(ECF No. 57 at 10.) Thomas further contends that "[t]he rule

that no noncommercial sign can be disfavored relative to any

commercial sign has been horn book law for decades." (Id.)

Thomas also asserts that Defendants removed the Perkins Road

sign with knowledge of the Chancery Court's order in the

Crossroads Ford case that held that Thomas' signs displaying

noncommercial messages are protected by the First Amendment and

exempt from regulation under the Billboard Act. (Id.) Thomas

argues that Defendants' actions were unreasonable because they

"are experienced in the realm of sign regulation and have the

benefit of many lawyers working for the State." (Id. at 11.)

With regard to the Chancery Court's order relied on by

Thomas, Defendants assert that that order was overturned by the

Tennessee Court of Appeals. (ECF No. 64.) Thomas argues that

the Court of Appeals' reversal "does not dictate the result in

this matter" because 1) the finding that Thomas was required to

pay TDOT restitution is unrelated to Thomas' First Amendment

arguments; 2) "the Court of Appeals['] decision was based on its

conclusion that the lower court did not have jurisdiction to

adjudicate Mr. Thomas' First Amendment defense based on the

first appellate decision in that case"; and 3) "the Court of

Appeals expressly recognized the possibility of Mr. Thomas' sign

fitting 'within one of the exceptions named in the Act' as set forth in Tennessee Code Annotated § 54-21-107." (ECF No. 65 at 9 (citing State ex rel. Dep't of Transp. v. Thomas, No. W2013-02082-COA-R3-CV, 2014 WL 6992126 (Tenn. Ct. App. Dec. 11, 2014)).)

Thomas' allegations, taken as true and viewed in a light most favorable to Thomas, establish a claim for First Amendment violations. Supra Part III.C.

Next, the Court considers whether Thomas' First Amendment and equal protection rights were clearly established at the time Defendants' conduct allegedly violated those rights. A constitutional right is clearly established if a reasonable person in the official's position would have known of the right. Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 263 (6th Cir. 2006); see Holzemer, 621 F.3d at 527-28 (considering whether a reasonable local city official "would have known that the Constitution prohibits retaliation for a citizen's exercise of his First Amendment right to Free Speech, whether that speech takes written, oral, or another form").

Thomas' First Amendment claims are based in large part on the removal of Thomas' various signs. The latest of Thomas' signs to be removed is the Perkins Road sign, which Thomas alleges to have been removed in October 2014. (See ECF No. 45 ¶ 69.) Because Thomas does not argue that his First Amendment

rights were violated at the time of removal of any signs removed prior to the removal of the Perkins Road signs, the Court will analyze Thomas' First Amendment rights as they existed in October 2014.

In October 2014, no binding precedent existed that expressly addressed the constitutionality of the Billboard Act and the First Amendment issues raised by Thomas. The Court agrees with Defendants that the most analogous and persuasive case that existed in October 2014 was Wheeler v. Comm'r of Highways, Commonwealth of Ky., 822 F.2d 586 (6th Cir. 1987). In Wheeler, the Court of Appeals upheld the constitutionality of the Kentucky Billboard Act in the face of challenges similar to those asserted by Thomas. See 822 F.2d at 589-90. Similar to the instant case, the Court of Appeals considered the constitutionality of the on-premise exemption in the Kentucky Billboard Act. The Court found the on-premise provision to be constitutional even though the Kentucky Billboard Act placed limitations on the size and spacing of on-premise signs. See id. at 588. Importantly, the Court of Appeals found that the Kentucky Billboard Act and the on-premise exception treated noncommercial and commercial speech alike. Id. at 594. The Court of Appeals distinguished the on-premise exemption from the restriction at issue in Metromedia in part because "the on-site exception can be applied to any topic, commercial or

non-commercial." Id. at 593.  The Court of Appeals also made
clear that a sign displaying noncommercial content qualified for
the on-premise exception "as long as an activity related to the
message is conducted on the property."  Id.

The similarity between the on-premise provisions in the
Tennessee and Kentucky Billboard Acts in conjunction with the
clear language by the Sixth Circuit in upholding the
constitutionality of the Kentucky Billboard Act is strong
evidence that Thomas' First Amendment claims would have failed
prior to the issuance of the Supreme Court's Reed v. Town of
Gilbert, Ariz. decision.  135 S. Ct. 2218 (2015).  In
comparison, Thomas' cited case law fails to persuade.  The
Chancery Court Order on which Thomas relies was reversed by the
Court of Appeals of Tennessee for lack of jurisdiction and, in
any event, would not be binding precedent for this Court.  Dep't
of Transp. v. Thomas, 2014 WL 6992126, at *8, appeal denied (May
18, 2015).  Thomas cites extensively to Eleventh Circuit cases,
which in light of the Wheeler decision, has limited influence on
this Court.  (See ECF No. 57 at 4-6.)  Thomas' reliance on
Metromedia is also of limited significance given the Court of
Appeals' analysis differentiating the on-premise provision in
the Kentucky Billboard Act from the restriction at issue in
Metromedia.  Accordingly, Thomas' First Amendment rights were

not clearly established prior to issuance of the Supreme Court's Reed decision.

Thomas also alleges First Amendment violations with regard to the Crossroads Ford sign, which has not yet been removed. Because proceedings regarding the Crossroad Ford sign are still pending and have been stayed by Court order in the instant case, the Court must consider whether Reed clearly established Thomas' First Amendment rights as to the Crossroad Ford sign.

As discussed in the Order Granting Preliminary Injunction (ECF No. 163), the Reed decision likely renders the entire Billboard Act unconstitutional under the First Amendment. Accordingly, the findings in the instant order now put Defendants on notice of the probable unconstitutionality of the Billboard Act, and Thomas' First Amendment rights are clearly established going forward.

For these reasons, the Court finds that Thomas has failed to satisfy his burden of alleging facts sufficient to overcome the individual Defendants' qualified immunity defense to Thomas' First Amendment claims. Further, because Defendants have not removed Thomas' signs at issue in the instant case subsequent to the Supreme Court's Reed decision, Thomas' claims for damages resulting from First Amendment violations against Defendants in their individual capacities are hereby dismissed with prejudice.

## ii.  Immunity from Equal Protection Claims

The Court must also consider whether Thomas' equal
protection rights were clearly established.  Without citing to
any case law, Defendants summarily contend that Thomas' equal
protection claims arising out of circumstances related to the
Perkins Road, Kate Bond, and Fayette County signs are barred by
qualified immunity.  (ECF No. 47.)  With regard to Thomas'
claims for unequal treatment during the PUD proceedings,
Defendants' do not expressly assert a qualified immunity
defense.  Instead, Defendants' discussion of the PUD claims is
limited to a challenge on res judicata grounds.  (ECF No. 47 at
16.)

"The Fourteenth Amendment provides that '[n]o State shall
. . . deny to any person within its jurisdiction the equal
protection of the laws.'"  <u>Bah v. Attorney Gen. of Tenn.</u>, No.
14-5861, 2015 WL 2167792, at *5 (6th Cir. May 8, 2015) (quoting
U.S. Const. amend. XIV, § 1).  "The Equal Protection Clause
prohibits states from making distinctions that either (1) burden
a fundamental right, (2) target a suspect classification, or (3)
intentionally treat one differently from others similarly
situated without any rational basis for the difference."  <u>Bench
Billboard Co. v. City of Toledo</u>, 499 F. App'x 538, 547 (6th Cir.
2012).  "[E]qual protection jurisprudence has typically been
concerned with governmental classifications that affect some
groups of citizens <u>differently</u> than others."  <u>Bah</u>, 2015 WL

2167792, at *5 (internal quotation marks and citations omitted).
Where the plaintiff's "claim does not concern a suspect class or
fundamental right, the state's action is subject to
rational-basis review." <u>Bah</u>, 2015 WL 2167792, at *5.  Under the
rational basis test, state action "must be sustained if any
conceivable basis rationally supports it.  A defendant need not
offer any rational basis so long as this Court can conceive of
one." <u>Bench Billboard</u>, 499 F. App'x at 548 (internal quotation
marks and citations omitted).

Furthermore, "the conscious exercise of some selectivity in
enforcement is not in itself a federal constitutional
violation." <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962).  "'In
order to make out an equal protection claim on the basis of
selective enforcement, a plaintiff must demonstrate that someone
similarly situated[--]but for the illegitimate classification
used by the government actor[--]was treated differently.'" <u>Bah</u>,
2015 WL 2167792, at *6 (quoting <u>Boone v. Spurgess</u>, 385 F.3d 923,
932 (6th Cir. 2004)).  The plaintiff "must demonstrate that it
and the entities who were treated differently were similarly
situated in all material respects." <u>Bench Billboard</u>, 499 F.
App'x at 547.

In the second amended complaint, Thomas alleges that
"Defendants have knowingly engaged in an enforcement action
against Mr. Thomas' sign at Crossroad[s] Ford even though they

are not actively attempting to remove similarly situated signs
without state permits that display the same type of
noncommercial content." (ECF No. 45 ¶ 81.) With regard to the
Perkins Road sign, Thomas alleges that Defendants knowingly
removed that sign "even though they have not removed similarly
situated signs without state permits that display the
substantively identical noncommercial content." (Id. ¶ 82.)
Thomas further alleges that "Defendants forcibly removed Mr.
Thomas' Perkins Road, Kate Bond, and Fayette County signs even
though TDOT had previously allowed similarly situated landowners
and/or sign owners to convert off-premise outdoor advertising
signs that did not have a TDOT permit to on-premise signs or
noncommercial signs." (Id. ¶ 86.) Thomas alleges that
Defendants' actions "were taken maliciously, intentionally, and
with reckless or callous indifference to Mr. Thomas' protected
rights. Defendants have threatened such behavior regarding the
Crossroads Ford sign as well." (Id.) With regard to the
rational basis prong, Thomas alleges that "[t]here is absolutely
no rational basis for such differences in treatment by
Defendants. Defendants' departure from their prior
interpretation of TDOT's Rules and Regulations in order to force
the removal of Plaintiff's signs, and threaten removal of
another sign, has violated Mr. Thomas' equal protection rights."
(Id. ¶ 88.) Thomas does not allege that he is part of a suspect

class or that the right he is seeking to protect is a
fundamental right.  Consequently, Thomas' claim for equal
protection violations is subject to the rational basis test.
Thomas has alleged that his signs received treatment different
from others similarly situated.  Thomas has also alleged that
there is no legitimate basis for the different treatment under
either the Billboard Act or TDOT's own rules and regulations.
Defendants do not directly challenge the sufficiency of Thomas'
claims.  Accordingly, the Court finds that Thomas has made out a
claim for equal protection violations.

The law applying the rational basis test for equal
protection is not new.  A reasonable person in Defendants'
positions as officers in TDOT would be aware of the equal
protection requirements for carrying out their agency's policies
and procedures.  Consequently, accepting all of the relevant
allegations as true and viewing them in a light most favorable
to Thomas, Defendants are not entitled to qualified immunity
with regard to Thomas' equal protection claims.

### 2.    Quasi-Judicial Immunity

"Non-judicial officers who perform quasi-judicial duties"
are entitled to "absolute judicial immunity."  Bush v. Rauch, 38
F.3d 842, 847 (6th Cir. 1994) (internal quotation marks
omitted).  "[I]mmunity extends to those persons performing tasks
so integral or intertwined with the judicial process that these

persons are considered an arm of the judicial officer who is immune." Id. To determine whether a state official is entitled to quasi-judicial immunity the Court

> "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" Buckley v. Fitzsimmons, 509 U.S. 259, ----, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993)(quoting Forrester, 484 U.S. at 229, 108 S. Ct. at 545). For example, a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. Id. On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available. Id.

Bush, 38 F.3d at 847. An official carrying out a court order acts with quasi-judicial immunity. See id. (finding that although the defendant "was not acting in a judicial capacity, . . . he was nevertheless acting as an arm of the court in carrying out the court order").

Defendants argue that they are entitled to quasi-judicial immunity with regard to claims that relate to the Perkins Road sign because Defendants were complying with a court order when they removed the Perkins Road sign. (ECF No. 47 at 13.) Defendants further assert that Thomas' allegations fail to establish that Defendants' actions were malicious. (Id.)

Thomas argues that the court order directing Defendants to remove the Perkins Road sign was not an order to remove, but rather only "indicated that TDOT should remove any commercial billboard present at the Perkins Road location." (ECF No. 57 at

12.)  Additionally, Thomas avers that "the Perkins Road litigation dealt only with use of the subject sign for commercial purposes . . . ."  (Id.)  Thomas asserts that because the Perkins Road sign displayed noncommercial messages, Defendants are not entitled to quasi-judicial immunity based on the court order.  (Id.)

Defendants' quasi-judicial immunity defense turns on whether Defendants were carrying out the Chancery Court's order when they removed the Perkins Road sign, accepting all of Thomas' alleged facts as true.  Thomas' argument that the court only ordered removal of a commercial billboard is misplaced. The Chancery Court order states, "TDOT is instructed to take appropriate action in regard to the removal of the billboards at the Perkins Road location."  (ECF No. 46-3 at 11.)  In reviewing the Chancery Court's order, the Court of Appeals of Tennessee explained that pursuant to Tenn. Code Ann. § 54-21-103(4), billboards may be built or maintained only "in areas that are zoned industrial or commercial under authority of law."  Thomas v. Tenn. Dep't of Transp., No. M2013-01780-COA-R3-CV, 2014 WL 2971027, at *5 (Tenn. Ct. App. June 27, 2014).  Thomas' Perkins Road sign was not removed based on its content; rather, it was removed because it "was not located in an area 'zoned industrial or commercial,' as the state statute and regulations require."

Id.  Both the Chancery Court and the Court of Appeals instructed TDOT to remove the Perkins Road sign.

Consequently, the individual Defendants were carrying out a court order when they removed the Perkins Road Sign.  For these reasons, the individual Defendants are entitled to absolute quasi-judicial immunity with regard to removal of the Perkins Road sign.  Accordingly, Thomas' claims with regard to the removal of the Perkins Road sign are hereby dismissed with prejudice.

### F.   Tennessee Constitution

Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution.  Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996).  Consequently, Thomas' claims for damages based on violations of the Tennessee Constitution are hereby dismissed with prejudice.  See id. at 180 ("We have held . . . that we know of no authority for the recovery of damages for a violation of the Tennessee Constitution by a state officer." (quoting Lee v. Ladd, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992))).

### G.   Injunctive Relief

Defendants challenge Thomas' claims for injunctive relief on three grounds: 1) a plaintiff may not sue state officials in their individual capacities for injunctive relief that relates to the officials' job; 2) federal court injunctions prohibiting

"Defendants from pursuing enforcement actions under State law .
. . . [are] barred by the Eleventh Amendment; and 3) Thomas'
request for injunctive relief is ambiguous.  (ECF No. 47 at
17-18.)  Defendants also challenge Thomas' claim for declaratory
relief as moot because the Perkins Road sign has already been
removed pursuant to court order, and "declaratory judgment to
the effect that defendants are violating state law would be
contrary to the core principles of state rights."  (Id. at 18.)
In support of this argument, Defendants assert that "[t]he
Declaratory Judgment Act does not create an independent basis
for federal subject matter jurisdiction and cannot be used to
circumvent the Eleventh Amendment."  (Id. at 18-19.)

Thomas argues that his claim for injunctive and declaratory
relief is directed only at Commissioner Schroer in his official
capacity.  (ECF No. 57 at 16.)  Thomas further asserts that
injunctive relief is appropriate under the Ex parte Young
doctrine.  (Id. at 16-17.)

The Court agrees with Thomas that the fourth claim for
relief in the second amended complaint, which is a claim for
declaratory and injunctive relief, is directed solely against
Commissioner Schroer in his official capacity.  (See ECF No. 45
at 21.)  Consequently, Defendants' first stated basis for
dismissal of Thomas' claims for injunctive and declaratory
relief is irrelevant to the instant case.

Defendants, however, correctly argue that this Court lacks authority to enjoin state officials based on violations of state law. The Supreme Court has explained that the purpose of the Ex parte Young doctrine is "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105 (1984) (quoting Ex parte Young, 209 U.S. 123, 160 (1908)). In Pennhurst, the Supreme Court explained that

> [t]his need to reconcile competing interests is wholly absent, however, when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of Young and Edelman disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106. The Supreme Court ultimately concluded "that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." Id. at 117. The Supreme Court held that the Eleventh Amendment similarly barred "state-law claims brought into federal court under pendent jurisdiction." Id. at 121. "[N]either pendent

43

jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Id.

In light of the Supreme Court's holding in Pennhurst, the Court finds that injunctive relief sought by Thomas for violations of the Tennessee State Constitution or any other state-law theory is barred by the Eleventh Amendment. Because the Declaratory Judgment Act requires an independent basis for federal subject matter jurisdiction to attach, Thomas' claims for declaratory judgment of state-law violations is also barred by the Eleventh Amendment. See Heydon v. MediaOne of Se. Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003).

With regard to Defendants' contention that Thomas' claims for injunctive and declaratory relief are ambiguous, the Court finds that Thomas' claims are sufficient to survive a Rule 12(b)(6) motion. Thomas' fourth claim for relief in the second amended complaint incorporates by reference the factual allegations in paragraphs 1-60. (ECF No. 45 ¶ 93.) Those factual allegations form a sufficient basis for Thomas' First Amendment and equal protection claims. See supra Parts.III.C, E. Consequently, Thomas' has alleged sufficient facts to sustain claims for injunctive and declaratory relief under Iqbal and Twombly.

Accordingly, Thomas' claims for injunctive and declaratory relief for violations of state law are hereby dismissed with

prejudice. Injunctive and declaratory relief based on violations of federal law, however, are not barred by the Eleventh Amendment and remain available in the instant case pursuant to Ex parte Young.

**IV.   CONCLUSION**

For the reasons stated above, Defendants' motion for partial dismissal of the second amended complaint is GRANTED as follows: 1) Thomas' First Amendment and equal protection claims that are based on the removal of the Fayette County and Kate Bond signs are time-barred; 2) Thomas has failed to state a claim for retaliation upon which the Court can grant relief under Rule 12(b)(6); 3) Defendants are entitled to qualified immunity from the First Amendment claims alleged in the second amended complaint and are put on notice that the Billboard Act has been declared unconstitutional by the instant Order; 4) Defendants are entitled to absolute quasi-judicial immunity as to the removal of the Perkins Road sign; 5) Thomas' claims for damages resulting from violations of the Tennessee Constitution are dismissed because Tennessee does not recognize a private cause of action for state constitutional violations; and 6) Thomas' claims for injunctive and declaratory relief resulting from state-law violations are barred by the Eleventh Amendment.

Defendants' motion is DENIED as to Thomas' remaining claims.

**IT IS SO ORDERED**, this 14th day of September, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE