IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| WILLIAM H. THOMAS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:13-CV-02987 |
| ) | |
| JOHN SCHROER, COMMISSIONER of ) | |
| TENNESSEE DEPARTMENT OF ) | |
| TRANSPORTATION, in his official ) | |
| Capacity, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW FILED PURSUANT
TO ORDER ECF #342

Comes now Plaintiff, William H. Thomas, Jr., by and through his undersigned counsel, and would file his Supplemental Memorandum of Law pursuant to Order of this Court (ECF #342) and in support thereof would state as follows:

INTRODUCTION

Laws subject to strict scrutiny are presumptively unconstitutional and can only survive if they (1) serve a compelling state interest and (2) are narrowly tailored to achieve that interest. *Id.; McIntyre,* 514 U.S. at 346–47, 115 S.Ct. 1511. "**[I]t is the 'rare case in which a speech restriction withstands strict scrutiny.'** " *Reed,* 135 S.Ct. at 2236 (Kagan, J., concurring in the judgment) (Affirmed by the 6th Circuit in *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (2016). This Court has ruled that the Tennessee Billboard Act (the"Act") is a content based Statute. Thus, the burden of proof is on the State to show a compelling State interest and that the Act is narrowly tailored to meet that interest applying a strict scrutiny standard.

Strict scrutiny requires the State to bear the burden of proving it has satisfied each of the elements of strict scrutiny which are: actual purpose, compelling State interest, proper

inclusiveness/sufficiently precise classifications, substantial advancement of the compelling state interest, and the least restrictive means under the Act.

The Act currently has illegal content based restrictions on speech with regard to on-premise and off-premise signs. Additionally, the Act illegally distinguishes between commercial and certain non-commercial speech set forth on an on-premise sign based on content.

I. <u>Each Element of Narrow Tailoring Must Be Met By The State Or The Act Is Unconstitutional.</u>

Most cases striking down speech restrictions rely primarily on the narrow tailoring analysis, which, according to the Supreme Court, contains four possible elements: *Advancement of the Interest, No Over inclusiveness, Least Restrictive Alternative,* and *No Under inclusiveness.* On their faces, all four of these prohibitions call for primarily empirical judgments -- judgments about the closeness of the fit between the law and the interest -- rather than normative ones. Once the Court concludes that the asserted State interest is compelling, the strict scrutiny framework requires that the Act be narrowly drawn to avoid it violating the First Amendment and thus be declared an unconstitutional law. The narrow-tailoring element, then, involves essentially compelling factual/legal questions about whether the Act is indeed narrowly drawn: Does the Act further the compelling State interest; is the law limited to speech that adversely affects the alleged compelling State interest; does the Act cover all such speech; are there less restrictive alternatives that will serve the interest equally as well?

It is very important, as an initial consideration, to acknowledge that under a narrow tailoring analysis if only **one** of the four elements fail then the Act fails narrow tailoring and thus is unconstitutional. No court has ever found that all four elements were satisfied by the State or even required. For instance, the Supreme Court in *Reed v. Town of Gilbert* found that the ordinance was both over inclusive and under inclusive and thus failed narrow tailoring. The Court did not

2

address the other two elements of the narrow tailoring analysis because they were not required as the ordinance had already failed.

This Honorable Court has asked for further briefing specifically addressing the "*Least Restrictive Alternative*" element of the narrow tailoring analysis. A law is not narrowly tailored if there are less speech-restrictive means available that would serve the compelling State interest essentially as well as would the speech restriction.[1] The justification for this requirement is similar to that for the over inclusiveness inquiry, though one can imagine a law that isn't over inclusive -- that restricts only the speech that implicates the interest -- but is still not the least restrictive alternative. This might happen when the interest can be served equally well with a restriction on unprotected conduct rather than on speech, *see, e.g.*, *Meyer v. Grant*, 486 U.S. 414, 425-28 (1988), or with a restriction that merely limits the speech in some ways rather than barring it altogether. *See, e.g.*, *Sable Communications*, 492 U.S. at 129-30. The government need not, however, choose an alternative that "fall[s] short of serving [the] compelling interests." *Burson v. Freeman*, 504 U.S. 191, 206 (1992) (plurality); *see also Buckley v. Valeo*, 424 U.S. 1, 28 (1976).

II.   Less Restrictive Alternatives to the Tennessee Billboard Act

The State is by no means powerless to regulate signs or billboards. Indeed, it has authority to regulate the physical characteristics of signs in a content-neutral manner, including, for example, treating all on-premise and off-premise signs the same. But the State has failed to steer clear of what the First Amendment says it must avoid: unjustifiably distinguishing among signs based on their content. Less restrictive alternatives are as follows:

1.   Limiting provisions to commercial speech only

Commercial speech only is not a proper standard. The Act in its current form regulates speech of the type displayed by Plaintiff in a manner far more restrictive than other types of

---

[1] *See, e.g.*, *Rutan v. Republican Party*, 497 U.S. 62, 74 (1990); *Sable Communications v. FCC*, 492 U.S. 115, 126 (1989); *Florida Star v. B.J.F.*, 491 U.S. 524, 538 (1989); *Boos v. Barry*, 485 U.S. 312, 329 (1988); *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 586 (1983).

commercial and non-commercial on-premise speech. Specifically, Plaintiff had billboards that stated "Go Team USA," "Trump – Make America Great Again," and a billboard calling out Commissioner Schroer. All three messages were deemed by the State to violate the Act. However, pursuant to the Act there is a list of on-premise speech that would be protected such as: 1) Directional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions that are authorized or required by law; 2) Signs, displays and devices advertising the sale or lease of property on which they are located; and 3) Signs, displays and devices advertising activities conducted on the property on which they are located. The State has offered no explanation for these differing exemptions to the Act that would demonstrate their narrow tailoring in furtherance of its compelling interests in aesthetics and traffic safety.

A less restrictive alternative would be for the Act to limit its regulations to commercial speech and placing all non-commercial speech, whether directional, political, patriotic, etc., as exemptions to the Act.

2.   Rules regulating the size of signs

Currently there is no regulation in the Act addressing the size of on-premise signs. Currently there is no restriction in the Act addressing the size of on-premise commercial or non-commercial signs. Such a restriction, if applicable to all signs, whether commercial or not, would be an appropriate content-neutral restriction. Such a regulation would further the State's alleged compelling interests of safety and aesthetics while treating all signs the same regardless of the content of each sign.

3.   Rules regulating the locations in which signs may be placed

Imagine that a beach town adopts a *de minimis* time, place and manner restriction: no person may use an electronic sound-amplification device on the beach between the hours of 1:00 a.m. and 6:00 a.m. A less restrictive alternative would be a law saying no amplification devices

4

between 2:00 a.m. and 5:00 a.m., or a law saying no amplification devices within 100 feet of a beachfront residence, or a law saying no amplifiers above 50 watts.

Likewise, the current Act places a restriction on signs requiring a thousand (1000) foot spacing between all off-premise signs, but places absolutely no restriction on the spacing between on-premise (commercial or non-commercial) signs. A less restrictive alternative would be to reduce the spacing requirement to five hundred (500) feet for all signs at all locations between any on-premise or off-premise signs.

4. Rules distinguishing between placement of signs on commercial and residential property

The Act does not allow for off premise signs to be erected on residential property. Under the Act, the zoning for all off-premise signs must be either industrial or commercial. The Act does not restrict the placement of on-premise signs to industrial or commercial. However, a less restrictive alternative would be to allow for all signs on and off-premise to be placed on property regardless of the zoning.

An exemption allowing property owners to put up any sign on their own premises would not be content based and would be consistent with the Supreme Court's previous holdings recognizing property owners' right to display signs on their own property. *See City of Ladue*, 512 U.S. at 56-57. Such a rule would permit property owners to display "for sale" or "for lease" signs, election signs, ideological signs, signs promoting their children's sports teams, or any other sign that strikes their fancy, while limiting the proliferation of signs by non-owners who may not have the same incentives as owners to maintain property values.

Although most on premise messages are commercial messages and in commercially zoned areas, these on-premise commercial signs can contain additional public statements about various issues. This is also true with on premise non-commercial signs posted by churches or the Sierra Club, pro-life and black life's matter meeting places which can be in non-commercially zoned areas, such as residential or agricultural zoned areas.. Such content based exemptions are not the

5

least restrictive means of achieving the State's interest. A regulation allowing for all property owners to display their own messages (commercial or non-commercial) would be an appropriate exemption.

5.  Rules distinguishing between placement of signs on public and private property

Currently, the Act does not regulate signs on public rights-a-way. A less restrictive means of the State achieving its alleged compelling interests would be to treat all signs on public and private property the same. This will effectively do away with the on-premise and off-premise distinction as it is currently in the Act which makes no distinction based upon the content of the signage. There should be no content analysis for on-premise or off-premise signs.

6.  Non-content based rules distinguishing between on- and off-premises signs

There is no provision in the Act which provides that noncommercial speech is permitted wherever commercial speech is permitted. Thus the noncommercial exemption does not resolve all of the Act's constitutional infirmities. Without the on-premise commercial and noncommercial exemption, the Act is completely silent as to noncommercial opinion speech. Such speech rarely involves a locational component; thus, presumably it would come within the off-premises definition, which means that, while on-premises sign users can display such speech based on the on-premise exemption as a freestanding sign that meets certain language cues relating it back to the activity conducted on the property, when that provision is no longer applicable, on-premises sign owners no longer have a clear means by which they can display noncommercial opinion speech. Distinguishing between different categories of noncommercial speech as well as favoring commercial speech over noncommercial speech violates First Amendment guarantees.

Therefore, a least restrictive means for the State to meets its compelling interest is for the Act to do away with the commercial and non-commercial distinctions for any on-premise signs.

Furthermore, private property owners should be allowed to display their own opinions and ideas whether a business is located on the property or not. Plaintiff's billboards expressing his own

ideas fell under the off-premise classification because no business was located on the property. A least restrictive means of achieving the State's compelling interests would be to place private property owners expressing their own ideas as being on-premise signs exempt from the Act. The simple solution to remedy this defect in the Act is to include a provision that noncommercial speech can be displayed anywhere commercial speech is permitted. (As this Court has pointed out changing portions of the act will not cure its deficiencies since it is so intertwined. See ECF 163, pages 19-21, Page ID 2279)

7. Rules restricting the number of signs

Currently the Act only regulates the number of off-premise signs based upon distance from each other. On-premise signs and all other signs falling under the exemptions of T.C.A. 54-21-103 and 104 can appear in an unlimited number. A least restrictive means of satisfying the State's asserted compelling interests of safety and aesthetics would be to treat all signs the same, particularly on-premise and off-premise signs. A least restrictive means would be to treat on-premise and off-premise signs the same when dealing with the number of signs that can appear within a set distance.

8. Rules distinguishing between presentation characteristics (e.g., lights, color, font size, electronic messages, moving parts).

Currently the Act only regulates presentation characteristics of off-premise signs. The Act does not regulate any presentation characteristics for on-premise signs. For instance, currently under the Act, an on-premise sign can be huge, much larger than an off-premise sign. Under the Act, treating all on-premise and off-premise signs alike based upon size or color or font would be a less restrictive means of furthering the State's interests. For example, currently IKEA can have an on-premise sign the size of a basketball court, yet Plaintiff cannot have a normal billboard expressing his own beliefs. Treating these two types of signs the same yet limiting them in size would further the State interest.

III.   Conclusion

The parties and the Court must focus on what is the compelling State interest that is attempted to be satisfied provided that such compelling State interest is not based on the content of the sign. Thus, any rational examination of the legal authority for sign regulations suggests that any distinctions among sign types based on content are unconstitutional pursuant to the strict scrutiny analysis. The aspects of signs that affect traffic safety and aesthetics are sign size, scale, height, material, lighting, color and motion, or lack thereof, and not content. The entire Act as written violates the First Amendment rights of Mr. Thomas and all other sign owners since it is content based and is therefore unconstitutional under the U.S. Supreme Court holding in the case of *Reed vs. Gilbert*, supra.

Respectfully submitted,

*/s/ George R. Fusner, Jr.*
_____
George R. Fusner, Jr. (BPR #005614)
*Attorney for Plaintiff*
Partin Ray Building
7104 Peach Court
Brentwood, TN  37027
Telephone:  (615) 251-0005
Facsimile:  (615) 370-8447
E-Mail:  gfusner@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2016, an exact copy of *Plaintiff's Supplemental Memorandum of Law filed pursuant to Order ECF #342* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties indicated below. All other parties will be served by regular U.S. Mail. Parties may access this filing system through the Court's electronic filing system.

Dawn Jordan, Esq.
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
E-mail: dawn.jordan@ag.tn.gov

William H. Thomas, Jr.
13599 Perdido Key Drive
Beach Colony Tower, Unit T-SH2A
Pensacola, FL 32507
E-mail: whthomas48@aol.com

/s/ George R. Fusner, Jr.
George R. Fusner, Jr.