# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

**WILLIAM H. THOMAS, JR.,**

                  **Plaintiff,**

**v.**                                        **Case 2:13-cv-02987-JPM-cgc**

**JOHN SCHROER,**
**Commissioner of TDOT,**

                  **Defendant.**

---

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

---

Before the Court is Plaintiff William H. Thomas, Jr.'s Motion for Attorneys' Fees, Costs and Expenses. (Docket Entry ("D.E.") #376). The instant motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #404). For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Motion be GRANTED IN PART AND DENIED IN PART. Specifically, the Court RECOMMENDS that Plaintiff be awarded as follows: $170,100.00 in attorneys' fees to attorney George R. Fusner ("Fusner"); $2,900.00 in paralegal fees to Fusner; $162,450.00 in attorneys' fees to attorney Jonathan L. Miley ("Miley"); $5,834.74 in costs incurred by Fusner; $312.90 in costs incurred by Miley; and, $4,565.56 in costs incurred by Plaintiff.

1

## I.        Introduction

This action concerns First Amendment violations that occurred when agents of the State of Tennessee (the "State") sought to remove one of Plaintiff's non-commercial billboards, also known as the Crossroads Ford sign, pursuant to the Billboard Regulation and Control Act of 1972 ("Billboard Act"), Tennessee Code Annotated Section 54-21-101, *et seq*.  An advisory jury trial was held from September 19, 2016 until September 22, 2016.  On March 31, 2017, United States District Judge Jon P. McCalla concluded that the Billboard Act is an unconstitutional, content-based regulation of speech.  Following Defendant Schorer's Rule 54(b) motion to reconsider the Court's ruling, which the Court denied, judgment was entered on October 6, 2017. The Judgment enjoined the State and its agents from removing or seeking removal of Plaintiff's Crossroads Ford sign pursuant to the Billboard Act.

Plaintiff was initially represented in this action by attorney Edward Webb  ("Webb") of the law firm of Webb, Klase & Lemond, LLC ("WKL").  WKL served as Plaintiff's counsel of record from the filing of his Complaint on December 17, 2013 until Webb's Motion to Withdraw as Attorney was granted on June 15, 2015.  Plaintiff, who is a licensed attorney,[1] then proceeded *pro se*[2] until May 13, 2016 when attorney Fusner of the Law Office of George R. Fusner Jr. filed

---

[1]  Plaintiff states that he has been licensed to practice law in Tennessee since 1973.  (Declaration of William H. Thomas, Jr., ¶¶ 1-2, filed at D.E. #376-7).  Plaintiff states that he was engaged in the active practice of law until approximately fifteen years ago.  (*Id*.)  Since that time, Plaintiff states that he has continued to practice law but only as to cases which he is a party.  (*Id*.) Plaintiff states that he has represented himself in "numerous state and federal proceedings in the State of Tennessee" and "numerous administrative proceedings in the State of Tennessee involving TDOT."  (*Id*.)

[2]  Plaintiff did not file a Notice of Appearance for his period of *pro se* representation from June 15, 2015 until May 13, 2016; instead, the record reflects that he began proceeding *pro se* on June 18, 2015 after WKL was permitted to withdraw from the case and continued to do so until Fusner filed a Notice of Appearance on May 13, 2016.  (*See* D.E. #104, #231).  Although not

2

his Notice of Appearance.  Fusner represented Plaintiff until February 27, 2018, when his Motion to Withdraw as Attorney was granted.  From February 27 to date, Plaintiff has again represented himself.

On April 18, 2017, Plaintiff filed a Motion for Attorneys' Fees relating to WKL's period of representation.  The State did not file a response thereto.  On September 20, 2017, the District Court determined that, "[a]lthough the Court has not granted all the relief Plaintiff sought in this case, the Court considers Plaintiff to be the prevailing party under 42 U.S.C. § 1988(b), and will allow Plaintiff to seek reasonable attorneys' fees and costs."  With no contest by the State, the District Court granted Plaintiff's request for $83,322.50 in attorneys' fees for WKL; however, the District Court denied Plaintiff's request that the award be enhanced by a multiplier, stating that Plaintiff had failed to produce specific evidence demonstrating that this case was so exceptional as to deserve an enhanced award.

On October 3, 2017, Plaintiff filed the instant Motion, which seeks an additional $671,750.00[3] in attorneys' fees and costs.  Plaintiff states that this request represents the work done by Fusner, including his office's paralegals, as well as the work done by Fusner's "writing and research attorney," Miley, of The Law Office of Jonathan L. Miley / Tennessee Appellate &

---

pertinent to the instant motion, Plaintiff did file a Notice of Appearance on February 22, 2018—the date Fusner's Motion to Withdraw as attorney was filed.  (*See* D.E. #400).

[3]  Plaintiff states that the "total sought as of the date of this filing is $672,092.37" with the costs and expenses totaling $15,934.61.  Relying upon these figures to remove the proposed costs from the total proposed award, the proposed lodestar for the attorneys' fees would be $656,157.76. However, the Court calculates the sum of all of the individual fee requests to be $671,750.00. Given these discrepancies, the Court will rely upon the proposed hours and rates set forth in the motion for each attorney and paralegal and will then subtract any hours the Court recommends to be removed from the lodestar.  The Court will then multiply each attorney and paralegal's hours to be awarded by his or her proposed rate.  The Court will recommend that the sum total of these fees be the lodestar amount for the attorneys' fees calculation.

Research Solutions, and Plaintiff's personally employed administrative assistant, Ricky Tan ("Tan").  This request contains their fees and costs through October 2, 2017.

It is critical at the outset of this motion to describe the roles of the individuals for whom Plaintiff seeks an award of fees.  Fusner acted in a traditional role as Plaintiff's counsel of record; Miley and Tan had somewhat more unconventional roles.  Miley was neither counsel of record in the instant case nor was he an attorney with Fusner's firm; instead, Miley describes his role as follows:  "I was engaged by the Plaintiff in March of 2015 to assist with the legal strategy of the case.  However, once Plaintiff's first counsels of record . . . withdrew from the case in May of 2015, my role on the case changed.  I continued with consulting and legal strategy for Plaintiff; however, I then began doing all of the legal research and legal writing on the case. Every pleading that has been filed by Plaintiff since May 22, 2015, has been drafting [sic] by me."  (Miley Decl. ¶ 5).  Fusner states that he "directed" Miley and utilized him because his fees are billed at a lower rate, which reduced the total fee request.  (Fusner Decl. ¶ 7).  It is imperative to note that Plaintiff himself retained Miley longer than he was represented by Fusner, including overlapping his representation by WKL and the period during which he proceeded *pro se*.

Tan serves as the executive assistant to Plaintiff at his law office, The Law Office of William H. Thomas, Jr.  Plaintiff asserts that Tan "performed paralegal type services in this case," such as maintaining and organizing litigation files, editing pleadings and correspondence, filing pleadings, transmitting documents between Plaintiff, Fusner, and Miley, performing legal research, arranging depositions, coordinating court reporter services, attending depositions in a supporting role, and assisting in court with document retrieval.  (Decl. of William H. Thomas, Jr.

at ¶ 6, filed at D.E. #376-7).  Tan worked for Plaintiff's firm on the case from November 2013 until September 2017.  (Ricky Tan's Time Sheet at 2-48, filed at D.E. #376-8).

## II.    Proposed Analysis

Section 1988 of the Civil Rights Act authorizes an award of fees and costs to the party who has prevailed in litigation under Section 1983.  A party prevails if, because of the party's initiative, the judiciary has materially altered the legal relationship between the parties, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001), or if he "has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit," *State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989).  "Normally this will encompass all hours reasonably expended on this litigation," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  *Id.*  "Such a lawsuit cannot be viewed as a series of discrete claims."  *Id.*  "Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.*

If an award of Section 1988 fees is appropriate, the Court must then determine what fee is "reasonable."  *Hensley*, 461 U.S. at 433; *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).  In determining a "reasonable" fee, the Court must first determine the "lodestar" amount, which is the product of multiplying the number of hours reasonably spent on the litigation by a reasonable hourly fee.  *Id.* at 433-437.  The party seeking to recover fees bears the

initial burden of substantiating the hours worked and the rate claimed.  *Id*. at 433.  The Court

may then increase or decrease that amount by considering other case-specific factors such as the

quality of the plaintiff's results.  *Id*.  However, the lodestar is presumed to be the reasonable fee

contemplated by Section 1988.  *Blum v. Stenson*, 465 U.F. 886, 887 (1984).

### A.   Attorneys' Fees

Here, Plaintiff sets forth the number of hours expended and the rates charged by Fusner,

by Miley, by paralegals, and by his administrative assistant, Tan, as follows: Fusner—559.50

hours at $350.00 per hour for a total fee request of $195,825.00; Miley—1296.5 hours at $250.00

per hour for a total fee request of $324,125.00; paralegals—29 hours at $100 per hour for a total

fee request of $2900.00; and, administrative assistant—1489 hours at $100 per hour for a total

fee request of $148,900.00.  (Pl.'s Mot. for Attorneys' Fees at 10).  Defendant does not contest

the rates charged by Fusner, Miley, Fusner's paralegals, or Tan; however, Defendant asserts that

the number of hours reflected in the lodestar amount is unreasonable and should be reduced for

numerous reasons.

### i.   Attorneys' Fees for Miley during WKL's Representation

First, Plaintiff seeks an award of fees for Miley for work performed during the time that

WKL served as his counsel of record.  WKL represented Plaintiff from December 17, 2013 until

June 15, 2015.  Miley's records show that his work for Plaintiff overlapped with that of WKL

from March 4, 2015 until June 13, 2015.

Plaintiff has already been awarded attorneys' fees and costs for WKL's representation.

Plaintiff's motion for attorneys' fees for WKL's representation, which the District Court granted,

stated that it sought "the reasonable fees and costs incurred in this case through May 31, 2015

(plus the fees incurred preparing this request) . . ."  (Pl.'s Mot. for Attorneys' Fees and Expenses,

filed on April 18, 2017 at D.E. #361).  Although the initial motion states that a "separate motion

may be filed for later fees," the Court is unaware of any basis, and Plaintiff has cited none, for

which Plaintiff may seek attorneys' fees for Miley during a period when he was represented by

other counsel of record and when that counsel of record has not stated that its firm was relying

upon Miley's services in any way to accomplish his representation.  In fact, Miley explicitly

states that he was retained by *Plaintiff* beginning in 2015 and continuing throughout WKL's

period of representation as what appears to be Plaintiff's second independent counsel.  (Miley

Decl. at 2 ¶ 5).  Miley states that he was "engaged" by Plaintiff "to assist with the legal strategy

of the case" until WKL withdrew and his "role on the case changed."  (*Id.*)  Specifically, after

WKL's representation ended, Miley states that he "continued with consulting and legal strategy

for Plaintiff" but then "began doing all of the legal research and legal writing on the case" such

that "[e]very pleading that has been filed by Plaintiff since May 22, 2015" was drafted by Miley.

(*Id.*)

    Although Defendant does not cite authority for the proposition that Miley should not be

awarded attorneys' fees during WKL's representation,[4] the United States Supreme Court has

recognized that "[c]ases may be overstaffed" and that such fees should be excluded from the

lodestar calculation as unreasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  There

is no indication why Miley's assistance was reasonable given that Plaintiff was represented by

Webb, who was also assisted by attorney G. Franklin Lemond, Jr. of WKL.  In fact, Webb's

---

[4]  Defendant instead broadly requests that all of Miley's fees be stricken because Plaintiff was
proceeding *pro se* (Def.'s Resp. to Pl.'s Mot. for Attys' Fees at 2-3, 6); however, as already set
forth, Plaintiff was not proceeding *pro se* during the period of WKL's representation, a time
period during which Miley also requests fees.  Thus, as this Court is required to propose a
reasonable fee, the Court specifically continued to consider the reasonableness of Plaintiff's
request for Miley's fees during WKL's representation.

Declaration states that, since 1996, his law practice has focused on First Amendment litigation with a particular emphasis on the representation of both outdoor advertising companies and individuals in challenges to local sign regulations. (Decl. of E. Adam Webb ¶ 2, filed at D.E. #361-3). Webb has acted as lead counsel in more than 100 such cases in federal and state courts across the country. (*Id*.) Additionally, Lemond's Declaration states that the focus of his practice has been First Amendment cases since 2004 with an emphasis on the representation of outdoor advertisers in challenges to municipal and county sign regulatory schemes. (Decl. of G. Franklin Lemond ¶ 5, filed at D.E. #361-4). Lemond also states that he has successfully litigated "dozens of such cases." (*Id*.) Accordingly, it is RECOMMENDED that 73.4 hours be removed from the lodestar calculation of Miley's award of attorneys' fees for the time during which Miley's legal work overlaps Plaintiff's representation by WKL.

### ii. Attorneys' Fees for Miley During Plaintiff's pro se Representation

Next, Defendant argues that Plaintiff seeks to recover attorneys' fees for Miley during the period when the record reflects that Plaintiff was proceeding *pro se*. Here, Plaintiff began representing himself on June 15, 2015, and Miley's invoices overlap with Plaintiff's *pro se* representation from June 16, 2015 until May 12, 2016 when Fusner's invoices state that his representation began.

Citing *Kay v. Ehrler*, 499 U.S. 432 (1991), Defendant argues that a *pro se* Plaintiff may not be awarded attorneys' fees, even if he himself is an attorney. *Id*. at 433-438. However, *Kay* does not answer the question of whether Plaintiff, an attorney who is proceeding *pro se*, may recover attorneys' fees for another attorney whom he has hired to assist him with his case during his "*pro se*" representation. However, as discussed, supra, attorneys' fees are unreasonable when

a case is "overstaffed." *Hensley v. Eckerhart*, 461 U.S. at 434. Essentially, this is the situation presented here, albeit with additional concerns. Plaintiff, as a matter of record, was acting as his own counsel; Plaintiff, in reality, had hired an attorney to assist him. While "[m]ultiple lawyer litigation is common and not inherently unreasonable," *see The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 704 (6t Cir. 2016), the Court RECOMMENDS that a *pro se* litigant requesting attorneys' fees for retained counsel for a period of time during which he is representing himself as a matter of record is highly unreasonable. Accordingly, it is RECOMMENDED that 467.7 hours be removed from the lodestar calculation of Miley's award of attorneys' fees for the time when Miley's legal work overlaps Plaintiff's *pro se* representation.

### iii. Plaintiff's Executive Assistant's Fees

Next, Defendant asserts that there is no authority allowing for Plaintiff to recover fees incurred by Tan, his executive assistant. Section 1988 explicitly provides that the prevailing party may be awarded "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Fees for paralegal services are recoverable, as the term "attorney fees" embraces fees of paralegals as well as attorneys. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008). Defendant does not contest an award of fees to Fusner's paralegals, and it is RECOMMENDED that Fusner's paralegals may be awarded their fees.

However, "'[p]urely clerical or secretarial tasks, that is, non-legal work, should not be billed—even at a paralegal rate—regardless of who performs the work." *William Howe v. City of Akron*, No. 5:06-cv-2779, 2016 WL 916701, at *15 (N.D. Ohio Mar. 10, 2016) (citing *Bernhart v. Comm'r of Soc. Sec.*, NO. 5:12CV2367, 2013 WL 3822141, at *2 (N.D. Ohio July 23, 2013)); *see also Richlin*, 553 U.S. at 585 (noting that reimbursement for costs typically

included in "office overhead," including wages paid to office staff, is not customarily charged to

clients or awarded as "attorney fees"). Plaintiff's declaration clarifies that Tan is neither a

paralegal nor a lawyer. (Pl.'s Decl. at ¶ 6). Accordingly, Tan may not be awarded fees for the

clerical or secretarial tasks he performed. Thus, it is RECOMMENDED that Tan's 1,489 hours

at $100 per hour be removed from the lodestar calculation.

### iv. Fees for Unrelated Matters

Next, Defendant contests Fusner's request for attorneys' fees for work unrelated to this

case, including as follows: work on another of Plaintiff's lawsuits, *William H. Thomas, Jr. v.*

*Richard Copeland*, 2:16-cv-02660-SHL-cgc; work on Plaintiff's bankruptcy matter; work on the

"Kate Bond administrative action"; work on a letter that the State sent to Plaintiff about

trespassing on State property; and, work on a "TI Properties Appeal." Defendant asserts that

Fusner requests a total of 10.5 hours on unrelated matters for a total of $3,675.00. Further,

Defendant asserts that Miley seeks to recover 1.5 hours in fees for the withdrawal of WKL and

one hour of fees for a Shelby County court matter involving the billboard at issue here,

Crossroads Ford. Upon review, the Court finds that it is unreasonable that Plaintiff be

compensated for fees related to other matters. Accordingly, it is RECOMMENDED that the

following hours be removed from the lodestar calculation—10.5 hours by Fusner; and, 2.5 hours

by Miley.[5]

---

[5] Defendant also notes that Plaintiff requested that Tan be compensated for work unrelated to the instant case, including as follows: work done in Plaintiff's lawsuit against TDOT, *William H. Thomas Jr. v. TDOT*, 2:13-cv-02185-JPM-cgc; matters involving Plaintiff's various administrative cases; withdrawal of Plaintiff's attorney from this lawsuit; and, a Davidson County Chancery Court matter in which TDOT seeks reimbursement for taking down Plaintiff's illegal signs. The Court has already RECOMMENDED that Plaintiff may not recover a fee for Tan's services as an executive assistant. However, if the District Court finds that Tan's fees should be awarded, it is alternatively RECOMMENDED that the time that Tan billed for work performed on other cases should be removed from the lodestar calculation as unreasonable.

### v. *Fusner's Fees for Unsuccessful Pursuits*

Next, Defendant asserts that Plaintiff requests fees for "[m]atters that he [l]ost," arguing

that these hours were not "expended in the pursuit of the ultimate result achieved." Defendant

explains Fusner's request for $16,395.00 in fees for failed pursuits in the case as follows:

> Fees for work done on "damages"—16.3 hours. (No damages awarded).
>
> Fees for work done on the Motion for Protective Order (Brian Carroll)—1.3 hours. (Protective order granted).
>
> Fees for direct examination of Plaintiff—1.0 hours. (Plaintiff never testified).
>
> Offer of Proof—1.7 hours.
>
> Objection to Amicus Brief—4.7 hours.
>
> "Work on Whether Jury Trial is Appropriate"—.6 hours.
>
> "Motion for Additional Facts"—13.4 hours.
>
> Offer of Proof—22.1 hours for Fusner; 6.1 paralegal hours.
>
>
> SUB-TOTAL: 45.1 hours at $350.00 per hour=$15,785.00.
>                      6.1 hours at $100.00 per hour=$610.00.
>
> TOTAL: $16,395.00.

(Def.'s Resp. to Pl.'s Mot. for Attorneys' Fees and Expenses at 5).

Both Plaintiff and Defendant rely upon the guidance provided in *Hensley* in their analysis

of whether recovery is appropriate for these hours. With respect to the successes and failures in

a given case, the *Hensley* Court reasons as follows:

> The product of reasonable hours and a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of the claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were

11

unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants—often an institution and its officers . . . —counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."  The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.

. . . .

There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may

12

> simply reduce the award to account for the limited success. The court necessarily
> has discretion in making this equitable judgment. This discretion, however, must
> be exercised in light of the considerations we have identified.

*Id*. at 434-435 (footnotes and internal citations omitted).

First, Defendant asserts that Fusner should not receive an award of 1.0 hours of the fees

incurred related to the direct examination of Plaintiff. Citing *Miller v. Dugan*, 764 F.3d 826 (8th

Cir. 2014), Defendant argues that time spent on a witness who was not used at trial is

"unnecessary." (*Id*. at n.5). However, in *Miller*, the Eighth Circuit considered an attorney

billing for fees in which the witness testified in a separate case. Although Defendant cites no

other authority for his proposition that this time is unreasonable, in *Huizinga v. Genzink Steel*

*Supply and Welding Company*, 984 F. Supp. 2d 741 (W.D. Mich. 2013), the court stated that,

"although a party may sometimes recover fees related to a witness who did not testify, in this

case [Plaintiff] has made no showing as to [the individual's] necessity as a witness." *Id*. at 754

(citing 10 Wright & Miller, *et al*., Fed. Prac. & Proc. § 2678, at 467-468 (3d. ed. 1998)

("Ordinarily, no fee may be taxed for someone who comes to the courthouse but does not testify

at the trial, the presumption being that the person was not a necessary witness. But this is no

more than a presumption."). In this case, however, Fusner billed for preparing Plaintiff to testify.

Whether or not he ultimately testified, Plaintiff is a party to the case and, potentially, a necessary

witness. As such, the Court RECOMMENDS that it was not unreasonable for the very brief time

of one hour to be spent by Fusner for the possibility of Plaintiff testifying, even if Plaintiff did

not eventually testify. Accordingly, the Court will not remove this time from the lodestar

calculation.

13

Next, Defendant argues that Plaintiff should not recover for Fusner and his paralegal's time relating to the offer of proof, Fusner's time relating to an objection to the amicus brief, Fusner's time for the Motion for Additional Facts, Fusner's work on whether a jury trial is appropriate, and Fusner's opposition to a protective order that was ultimately granted. Defendant does not provide any basis for these objections other than generally stating that they were not "expended in pursuit of the ultimate result achieved." (Def.'s Resp. to Plaintiff's Mot. for Attys. Fees at 4-5). This brief statement does not provide the Court with sufficient basis to analyze these billing entries under *Hensley*, which is primarily concerned with the success on claims raised in the litigation rather than the success on individual filings. Accordingly, the Court RECOMMENDS that these hours are not unreasonable and should not be removed from the lodestar calculation.

Finally, Defendant asserts that it is unreasonable for Fusner to be awarded 16.3 hours for work done on damages when no damages were awarded in the case. Upon review, the District Court stated that "monetary damages hinge on separate factual and legal determinations" than the constitutionality of the Billboard Act. (Sept. 6, 2016 Order Regarding Def.'s Mot. in Limine as to Money Damages). After concluding that the Billboard Act was unconstitutional, the District Court ordered supplemental briefing on the issue of remedies. (April 4, 2017 Order for Supp. Briefing on the Issue of Remedies, filed at D.E. #357). The parties' respective briefing was filed thereafter. (*See* D.E. #360, #361, #363, #364, #365, #368). The Court additionally held a status conference on the issue and permitted further briefing. (D.E. #369, #370, #372). Ultimately, Plaintiff requested injunctive relief, declaratory relief, post-judgment interest, restitution of real property, and other additional relief. The District Court denied the requested

injunctive relief, declaratory relief, restitution of real property, and additional relief but granted the request for post-judgment interest.  (Order Denying Mot. for Reconsideration and Order Concerning Remedies at 10-29, filed at D.E. #374).  Thus, Plaintiff had limited success obtaining the remedies sought, and the pursuit of remedies was distinct from the claim on which Plaintiff was successful.  Accordingly, it is RECOMMENDED that the 16.3 hours for work done on damages and other remedies be removed from the lodestar calculation of Fusner's fees.

### vi.  Miley's Fees for Unsuccessful Pursuits

Next, Defendant further that Miley requested a total of 507.7 hours of fees "on matters which plaintiff lost."  (Def.'s Resp. to Pl.'s Mot. for Attorneys' Fees at 6 & Exh. 5).  Exhibit 5 to Defendant's Response to the instant Motion details the specific entries he proposed should be removed from the lodestar calculation of Miley's attorneys' fees as unsuccessful pursuits.  The majority of these fees the Court has already recommended to be removed as overlapping Plaintiff's representation by WKL or his *pro se* representation.  (*See id*. at 1-9 & 17).  The remaining requests are as follows: (1) 93.7 hours spent on "damages claims"; (2) 10.8 hours spent on Plaintiff's Motion for Additional Findings of Fact (D.E. #242), which was filed in relation to this Court's Order Granting Defendant's Motion for Summary Judgment (D.E. #233), which this Court denied (D.E. #273); (3) 11.9 hours spent on a disclosure of Plaintiff's proposed fact witnesses at trial when none of whom were ultimately called at trial; (4) 9.5 hours spent on Plaintiff's late-filed notice of deposition for Brian Carroll, which this Court quashed upon Defendant's request (D.E. #251, #259); (5) 2.7 hours spent on consideration of an expert witness when no expert witness was ultimately submitted; (6) 33 hours spent on Plaintiff's offer of proof on damages, none of which were granted by the Court (D.E. #263); (7) 9.5 hours spent on

15

Plaintiff's objection to the jury trial (D.E. #307), which the Court denied (D.E. #314); (8) 19.5 hours spent on Plaintiff's opposition to a Motion for Amicus (D.E. #347), which this Court denied (D.E. #348); and, (9) 73.1 hours spent for work on the jury trial.

First, Plaintiff's requests for Miley to be awarded 93.7 hours for time spent on Plaintiff's damages claims. As discussed above, *supra* Section II.a.v., Plaintiff achieved limited success on his pursuit of remedies, which the District Court found to be a distinct pursuit from the claim on which he was successful. Accordingly, it is RECOMMENDED that these 93.7 hours be removed from the lodestar calculation of Miley's attorneys' fees.

Next, Defendant asserts that Plaintiff should not be awarded the time that Miley spent on the jury trial because Plaintiff was not successful at the jury trial. As discussed above, *supra*, Section II.a.v., the District Court determined that an advisory jury trial was an appropriate and necessary step for the resolution Plaintiffs claims. Further, the District Court ultimately ruled in Plaintiff's favor on the constitutionality of the Billboard Act. Accordingly, it is RECOMMENDED that these 39.1 hours spent by Miley on the jury trial should not be removed from the lodestar calculation.[6]

Finally, the remaining requests that Defendant believes should be stricken from Miley's lodestar calculation fall into two categories: (1) futile efforts by Plaintiff; and, (2) unsuccessful motions filed by Plaintiff. As to futile efforts, Defendant asserts that Miley expended 11.7 hours preparing a witness list for trial when ultimately none of the witnesses were relied upon and 2.7

---

[6] Plaintiff's full request was for 73.5 hours for Miley's time spent on the jury trial (*Id*. at 16-17); however, it has already been RECOMMENDED that 34.4 of those hours be removed from the lodestar calculation as overlapping WKL and Plaintiff's *pro se* representation. Thus, only 39.1 hours remain to be considered. If the District Court were to determine that the 34.4 hours should not be stricken for overlapping WKL and Plaintiff's *pro se* representation, it is RECOMMENDED, in the alternative, that all 73.5 hours of Miley's time spent on the jury trial be stricken for the reasons stated herein in regards to time spent on that phase.

hours attempting to find an expert witness when no expert witness was ultimately submitted. While the Court understands that the consideration of fact and expert witnesses is a necessary step in preparation for a jury trial, the Court also RECOMMENDS that is unreasonable to award payment for 14.4 hours expended on these matters when, ultimately, none of the fact witnesses were presented and no expert witness was designated.  Thus, the Court RECOMMENDS that only 5 hours be awarded for Miley's consideration of potential fact and expert witnesses at the jury trial.

With respect to the fees on unsuccessful efforts, including various motions and a noticed deposition that was quashed, Defendant does not provide any basis for these objections other than generally stating that Plaintiff did not succeed in these steps taken during the litigation. (Def.'s Resp. to Plaintiff's Mot. for Attys. Fees at Exh. 5).  This brief statement does not provide the Court with sufficient basis to analyze these billing entries under *Hensley*, which is primarily concerned with the success on the overarching claims raised in the litigation rather than the success achieved by individual filings.  Accordingly, the Court RECOMMENDS that these hours are not unreasonable and should not be removed from the lodestar calculation of Miley's fees.

### vii. *Excessive, Redundant, and Unnecessary Fees*

Defendant's final challenge regarding the lodestar calculation of Plaintiff's attorneys' fees is that Plaintiff should not recover for excessive, redundant, and unnecessary fees. Defendant again relies upon *Hensley*, *supra*, Section II.A.v., for the proposition that the fee award should be reduced because his relief is limited in comparison to the scope of the litigation as a whole.  Defendant further argues that Plaintiff did not achieve "significant success" because he "lost on all of his damages claims," he "lost on the 5 TRO requests (other than the Cross

Roads Ford of course)," he "lost the jury trial," and he "caused all parties and this Court to undergo needless work on many frivolous claims." (Def.'s Resp. to Plaintiff's Mot. for Attys. Fees at 6). Specifically, Defendant challenges the following of Fusner's fees as excessive, redundant, and/or unnecessary:

> Fees for consultation with "Braden" with Beacon Group—4.3 hours
>
> Fees for reviewing the Order on the Motion to Dismiss—1.0 hours
>
> Fees on the Motion for Additional Time—.5 hours
>
> Fees for PACER on 8/26—.4 hours
>
> Fees for the preparation and taking of Brian Carroll's deposition—14.9 hours
>
> Work on the trial, including pre-trial preparation, taking depositions of trial witnesses, and time at trial—237.3 hours
>
> Work on the "Remedies Memorandum"—46.7 hours

(*Id*. at 6-7).

With respect to Fusner's fee for consultation with "Braden" of the Beacon Group, the record reflects that attorney Braden H. Boucek ("Boucek") is counsel of record for one of the amicus curiae in this case, Beacon Center of Tennessee ("Beacon Center"). The Beacon Center filed an amicus curiae brief (D.E. #188) asserting that the Billboard Act's content-based exceptions violate the First Amendment in light of *Reed v. Gilbert*, 135 S.Ct. 2218 (2015). For this reason, the Beacon Center argued that the Court should grant summary judgment in favor of the Plaintiff.

Defendant challenges Fusner's 4.3 hours of fees for consultation with Boucek because there is "no indication" that he "provided any input into the case at hand other than filing a general amicus brief on the Billboard Act." (Def.'s Resp. to Plaintiff's Mot. for Attys. Fees at

18

6).  Defendant cites no authority, other than the overarching principles in *Hensley*, to support its proposition that these hours are unreasonable.  Upon review, the Court finds it to be imminently reasonable that Plaintiff's attorney should spend time consulting with Boucek, whose amicus curiae brief is thorough and exhaustive in support of Plaintiff's proposition that the Billboard Act impinges upon constitutional freedoms.  Further, the District Court ultimately concluded that the Billboard Act is unconstitutional, making this time particularly reasonable under *Hensley*.  Accordingly, it is RECOMMENDED that these hours not be removed from the lodestar calculation of Fusner's attorneys' fees.

Next, Defendant asserts that Fusner's billing for reviewing the Order on Motion to Dismiss, which was issued at a time when Plaintiff was proceeding *pro se*, is excessive, redundant, or unnecessary.  Specifically, Defendant states that there is "nothing to indicate why there was a need to review the Order," especially when Fusner charged a significant number of hours other for his review of the file.  (Def.'s Resp. to Plaintiff's Mot. for Attys. Fees at 6).  Although this Court did enter an order on a motion to dismiss while Plaintiff was proceeding *pro se*, (*see* D.E. #165, #167, #170), Defendant does not provide a date on which Fusner billed for this hour for the Court to consider the reasonableness of this entry.[7]  Further, Fusner's billing records begin on May 12, 2016, the date before he filed his notice of appearance in this case, and continue until October 2, 2017, nearly five months before he ceased his representation of Plaintiff.  Thus, unlike Miley, they do not contain billing entries overlapping the time Plaintiff proceeded *pro se*; at most, they only include a brief review of a step taken while Plaintiff

---

[7]    In an attempt to determine the date of the challenged billing, the Court has reviewed Defendant's Exhibit 1, which includes its analysis of Fusner's billing records, including all entries highlighted in yellow which Defendant notes indicate excessive, redundant, and/or unnecessary charges.

represented himself, which is not unreasonable.  Accordingly, it is RECOMMENDED that this hour not be removed from the lodestar calculation of Fusner's attorneys' fees.

Next, Defendant asserts that Plaintiff should not be awarded 0.50 hours in time for the Motion for Additional Time.  Defendant relies upon *Steele v. Van Buren Public Sch. Dist.*, 845 F.2d 1492 (8th Cir. 1988), for the proposition that motions for extension are "unnecessary."  *Id.* at 1496.    In *Steele*, the attorney requested 26.7 hours for obtaining an extension and continuances.  *Id.*  The court did not entirely disallow the fees but instead removed 11.7 hours for the attorney's "failure to meet court deadlines."  *Id.*  Here, 0.50 hours for a single Motion for Additional Time is not only reasonable but to be expected during the pendency of a case of this nature.  Accordingly, it is RECOMMENDED that this time is reasonable and should not be deducted from the lodestar calculation of attorneys' fees.

Next, Defendant argues that Fusner's 0.40 hours expended to utilize Public Access to Court Electronic Records ("PACER") was unreasonable because he had already billed for many hours to review Plaintiff's file.  While certainly Fusner performed other file review over the course of this litigation, Defendant provides no reason why this particular charge to access records is unreasonable.    Accordingly, it is RECOMMENDED that Plaintiff's 0.40 spent accessing PACER is reasonable and should not be deducted from the lodestar calculation of attorneys' fees.

Next, Defendant argues that Fusner's 14.9 hours billed for preparing and taking the deposition of Brian Carroll is unreasonable because Plaintiff never used the deposition for any purpose related to the injunction or declaratory judgment.  Defendant cites no authority that such fees are unreasonable, and the Court finds that it is reasonable to conduct a complete and

thorough investigation into the evidence in the case regardless of whether specific evidence is used to support relief or not.  Accordingly, it is RECOMMENDED that Plaintiff's 14.9 hours spent preparing for and taking the deposition of Brian Carroll is reasonable and should not be deducted from the lodestar calculation of attorneys' fees.

Next, Defendant argues that Plaintiff's 237.3 hours for work on the advisory jury trial, including pre-trial preparation, taking depositions of trial witnesses, and time spent at trial, is unreasonable because Plaintiff lost the trial.  In the alternative, Defendant argues that Fusner should only be awarded 10% of the time spent on the jury trial.  A thorough consideration of this issue requires an examination of the parties' positions as to the role of the jury and ultimately the District Court's exhaustive consideration and determination of the appropriate role of the jury in this matter.

Plaintiff requested a trial by jury from the initiation of the case until the final amendment to the complaint.  (Third Am. Compl. at 44 ¶ 8, filed at D.E. #232).  Defendant also demanded a jury trial.  (Answer at 9 ¶ 9, filed at D.E. #17; Amended Answer at 9 ¶ 9, filed at D.E. #79).  On March 30, 2016, the District Court entered an Order Denying Plaintiff's Motion for Partial Summary Judgment (D.E. #216), which concluded as to the constitutionality of the Billboard Act that, while it is "unlikely to survive strict scrutiny, Plaintiff is not entitled to summary judgment because there are disputed issues of material fact as to whether the governmental interests asserted by Defendants are compelling."  (Order Denying Pl.'s Mot. for Summ. J. at 13).  On May 16, 2016, the District Court entered an Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (D.E. #233), which again stated that the Billboard Act is likely an unconstitutional content-based restriction on speech but concluded that the fact

finder must make a determination on the question of whether the restrictions are "narrowly tailored to serve compelling state interests." (Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. at 15-16).

On May 16, 2016, Plaintiff waived his demand for a jury, stating that he believed the "issues and facts are of a legal complexity to render a jury trial ineffectual and lengthy." (Pl.'s Waiver of Jury Trial Demand at 1, filed at D.E. #378). Defendant did not agree to waive its demand for a jury. (*Id*.) On September 6, 2016, the Court entered an Order Regarding Defendants' Motion in Limine as to Money Damages (D.E. #301) stating that the jury would decide two issues: (1) whether the State has a compelling interest that is furthered by the Billboard Act; and, (2) whether the Billboard Act is narrowly tailored to the State's interest. (Order Regarding Defendants' Motion in Limine as to Money Damages at 1). The District Court made clear that the jury would not make the final determination on the constitutionality of the Billboard Act. (*Id*.)

The four-day advisory jury trial began on September 19, 2016. (D.E. #320, #321, #322, #328). On September 22, 2016, a jury found that the State had a compelling interest that is furthered by the Billboard Act and that it was narrowly tailored to that interest. (D.E. #329). On the same day, Plaintiff filed a Rule 52 Motion for Verdict as a Matter of Law (D.E. #325). The State filed a response in opposition on Plaintiff's Rule 52 motion on October 7, 2016 (D.E. #336), and Plaintiff replied on October 21, 2016 (D.E. #340). On October 26, 2016, the Court entered an Order Concerning Least Restrictive Means, ordering the parties to file supplemental briefing on that issue (D.E. #342), and the parties complied (D.E. #343, #344). Additional briefing by the Amici Curiae was also sought and permitted, as was Plaintiff's response thereto.

(D.E. #346, #347, #348, #352, #354).  On March 31, 2017, the District Court entered its Order &
Memorandum Finding Billboard Act an Unconstitutional, Content-Based Regulation of Speech.
(D.E. #356).

This procedural history makes clear the following: (1) Plaintiff ultimately opposed a jury
trial; (2) Defendant continued to demand a jury trial; and, (3) the District Court, after exhaustive
consideration and briefing, determined that an advisory jury trial on two issues was appropriate.
Although the jury's findings were in favor of the State, the District Court's ultimate ruling was
that the Billboard Act was unconstitutional.  Fusner's work in preparation for and throughout the
jury trial was an essential part of what the District Court determined to be the proper manner to
resolve this case.  Accordingly, it is RECOMMENDED that Fusner's 237.3 hours for work on
the trial, including pre-trial preparation, taking depositions of witnesses, and the time at trial, are
all reasonable and should not be removed from the lodestar calculation.

Finally, Plaintiff requests that Fusner be compensated for 46.7 hours spent preparing his
"Remedies Memorandum."  (*See* D.E. #360).  As discussed above, *supra* Section II.a.v., Plaintiff
achieved limited success on his pursuit of remedies, which was a distinct pursuit from the claim
on which he was successful.  Accordingly, it is RECOMMENDED that Fusner's 46.7 hours
spent preparing his "Remedies Memorandum" be removed from the lodestar calculation.

### B.  Costs

Plaintiff further requests cost in the amount of $15,934.71, which were incurred by
Fusner, Miley, and Plaintiff.[8]   Specifically, Plaintiff requests $5,834.74 in costs incurred by
Fusner. $320.90 in costs incurred by Miley, and $9,787.07 in his own costs.  Defendant asserts
that various costs sought incurred by Fusner and by Plaintiff are not recoverable.  As to Fusner's

---

[8]    Plaintiff states that the total of the requested costs is $15,934.61; however, by the Court's
calculation, the sum of the requested costs is $15,934.71.

costs, Defendant states that a $13.00 parking fee for meeting with Attorney Boucek is unreasonable; however, the Court has already determined that it was reasonable for Fusner to coordinate Plaintiff's efforts with Boucek, who filed an amicus curiae brief supporting Plaintiff's position that the Billboard Act was unconstitutional. Accordingly, it is RECOMMENDED that this $13.00 cost is reasonable and should be awarded.

Defendant also asserts that Fusner's request for $1,319.00 in costs related to Brian Carroll's deposition is not recoverable because his deposition was not used. However, the Court has RECOMMENDED, *supra*, Sections II.A.v, II.A.vi, and II.A.vii, that the attorneys' fees incurred in relation to Carroll's deposition should not be removed from the lodestar calculation. Likewise, it is RECOMMENDED that the costs should be awarded.

As to the costs incurred by Plaintiff (*see* Pl.'s Mot. for Attys.' Fees, Exh. 9, filed at D.E. #376-9), Defendant asserts that $6,341.08 in costs were incurred for various depositions that were ultimately not used. These costs were incurred from July 28, 2015 until December 1, 2015, when Plaintiff was representing himself *pro se*. Although costs may be awarded to an attorney proceeding *pro se*, the Court is concerned that this appears to be an excessive amount of fees for depositions that were not used and were taken by a *pro se* attorney. Accordingly, it is RECOMMENDED that twenty-five percent of the costs incurred related to these depositions be awarded ($1,585.27) and that seventy-five percent of the costs incurred related to these depositions be removed ($4,755.81).

Defendant further asserts that Plaintiff incurred $400.00, which was the filing fee for Case 2:16-CV-2660, and $65.70 for various mailings, of which the contents are unknown. It is RECOMMENDED that these costs are unreasonable, as the filing fee for another case may not

be awarded in this case and the mailings are not described with sufficient detail to determine if they should be awarded. Accordingly, it is RECOMMENDED that these two entries, in the amount of $465.70, be deducted from Plaintiff's award of costs.

In sum, it is RECOMMENDED that $5834.74 in costs be awarded to Fusner, $312.90 be awarded to Miley, and $4,565.56 be awarded to Plaintiff.

## III.    Conclusion

For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses be GRANTED IN PART and DENIED IN PART. It is RECOMMENDED that the following attorneys' fees and costs be awarded: $170,100.00 in attorneys' fees to attorney George R. Fusner ("Fusner"); $2,900.00 in paralegal fees to Fusner; $162,450.00 in attorneys' fees to attorney Jonathan L. Miley ("Miley"); $5,834.74 in costs incurred by Fusner; $312.90 in costs incurred by Miley; and, $4,565.56 in costs incurred by Plaintiff.

Signed this 12th day of December, 2018.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**